2008 ME 194

**JPP, LLC**

v.

**TOWN OF GOULDSBORO.**

Supreme Judicial Court of Maine.

Argued: Oct. 30, 2008.

Decided: Dec. 30, 2008.

Edmond J. Bearor, Esq. (orally), John K. Hamer, Esq., Rudman & Winchell, LLC, Bangor, ME, for JPP, LLC.

James E. Patterson, Esq. (orally), Ellsworth, ME, for the Town of Gouldsboro.

Peter R. Roy, Esq. (orally), Ellsworth, ME, for Intervenors Robert G. Duerr, Jr., Adrianna A. Duerr, Jean M. Humez, and Paul Alexander Humez.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY,* and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] The Town of Gouldsboro's Planning Board denied JPP, LLC's application to create a subdivision on the shores of Jones Pond, concluding that the proposal did not meet a requirement that applied to dead-end roads, and that no waiver of that requirement was warranted. The Superior Court (Hancock County, *Cuddy, J.*) af-

---

* Justice Levy was not present at oral argument but participated in this opinion. *See* M.R.App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

firmed the Town's decision on appeal. JPP now appeals from the Superior Court's decision, contending, among other things, that the Planning Board erred in its application of the dead-end street length limitation to the configuration of the roads within the proposed subdivision. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In March of 2007, JPP filed a preliminary application with the Town of Gouldsboro for a fourteen-lot residential subdivision to be called Jones Pond Retreat. The 22.8-acre parcel of land upon which the subdivision would be developed lies at the southern tip of Jones Pond and is situated between Route 195 to the east and Route 186 to the west. To connect Route 186 to Jones Pond Retreat, JPP proposed to construct a road of approximately 11,000 feet in length, to be called Rocky Road. At the other side of the subdivision, the access to Route 195 from the parcel would be by a private seasonal road called South End Road. Because South End Road is private, some but not all of the fourteen lots in Jones Pond Retreat would have deeded access over it to Route 195. Acknowledging that use of South End Road was limited, JPP also proposed to construct a gate where Rocky Road and South End Road would connect, thereby restricting access to South End Road to emergency vehicles and those lot owners with deeded access.[1] Thus, Rocky Road would terminate at the point that it connected to South End Road. No other roads connected at that proposed point of connection.

[¶ 3] The Gouldsboro Planning Board discussed the proposed Jones Pond Retreat subdivision at numerous meetings held between April and September of 2007. At one of the meetings, JPP submitted a waiver request to the Board, seeking to avoid the application of a 1,000-foot dead-end road length limit, contained in the Town's Subdivision Ordinance,[2] to the proposed Rocky Road.

[¶ 4] The public hearing on the proposed subdivision was held on August 7, 2007, and concerns regarding use of the South End Road, construction of the new Rocky Road, and the overall environmental impact of the subdivision were discussed. On August 21, 2007, the Board considered the road length waiver request. The Board voted 4–1 against waiving the road length restriction, and then, by a vote of 5–0, denied the subdivision application on the grounds that the application, as submitted, did not meet the requirements of the Subdivision Ordinance.

[¶ 5] The Board ultimately approved findings of fact that identified four reasons for the denial of the Jones Pond Retreat subdivision: (1) Rocky Road did not conform with the 1,000-foot road length limitation; (2) all freshwater wetlands within the subdivision had not been identified; (3) the subdivision did not provide for ade-

1. At oral argument, counsel for JPP suggested that the gate could easily be omitted from its plans.

2. The relevant ordinance provides: "A dead-end street or cul-de-sac shall not exceed one thousand (1,000) feet in length and shall be provided to a suitable turn-around at the closed end. When a turning circle is used, it shall have a minimum outside curb radius of sixty-five (65) feet." Gouldsboro, Me., Subdi-

vision Ordinance art. X, § C(3)(3)(h) (Mar. 5, 1979).

The Subdivision Ordinance contains an apparent numbering error whereby article X, section C, entitled "Streets," begins with subsections one through three, and then reverts back to a subsection one. The relevant ordinance dealing with dead-ends is thus contained in the second subsection three contained within article X, section C.

quate storm water management; and (4) the long-term cumulative effects of the subdivision would unreasonably increase a great pond's phosphorus concentration during the construction phase and life of the subdivision.[3]

[¶ 6] JPP appealed the application denial to the Superior Court pursuant to M.R. Civ. P. 80B.[4] The court affirmed the denial on the basis of the road-length limitation, finding that, because Rocky Road would be longer than 1,000 feet and not all of the subdivision owners would have deeded access to South End Road, Rocky Road would meet the Subdivision Ordinance's definition of "dead-end" with respect to those owners. The court concluded that "[i]t is the lack of lawful authority to cross the [South End Road] that makes the terminus of the Rocky Road with the [South End Road] a dead-end intersection."

[¶ 7] Based on this conclusion, the court determined that JPP's claims of error with regard to the other three findings of the Board were moot.[5] JPP then timely filed this appeal.

## II. DISCUSSION

[¶ 8] The interpretation of a local ordinance by a planning board is a question of law that we review de novo. *Bodack v. Town of Ogunquit*, 2006 ME 127, ¶ 6, 909 A.2d 620, 622. In doing so, we first look "to the plain meaning of the statutory language to give effect to legislative intent." *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 7, 946 A.2d 408, 410 (quotation marks omitted). Undefined terms within an ordinance are given "their common and generally accepted meaning unless the context clearly indicates otherwise," and are construed reasonably, with consideration given to "both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Id.* ¶ 9, 946 A.2d at 411 (quotation marks omitted).

[¶ 9] Here, the relevant Subdivision Ordinance provides: "A dead-end street or cul-de-sac shall not exceed one thousand (1,000) feet in length and shall be provided to a suitable turn-around at the closed end." Gouldsboro, Me., Subdivision Ordinance art. X, § C(3)(3)(h) (Mar. 5, 1979). The term "dead-end" is not defined within the ordinance, but the definitional section provides that "words and terms used in these standards shall have their customary dictionary meanings." Gouldsboro, Me., Subdivision Ordinance art. III (Mar. 5, 1979).

[¶ 10] The parties do not dispute that South End Road is a "street" under the ordinance.[6] JPP contends that because the proposed Rocky Road would begin at Route 186 and connect to South End Road,

3. In addition to its challenge to the Board's interpretation of the applicable dead-end street length limitation, JPP also argues on appeal that there was insufficient evidence on the record to support the additional findings upon which the application denial was based and that consideration of evidence related to JPP's plan to address phosphorus control measures violated its due process rights. Because we conclude that the Town did not err in its application of the dead-end road ordinance and affirm on that basis, we do not reach those challenges and do not address the Superior Court's conclusions applicable to them.

4. The Town's Subdivision Ordinance provides: "An appeal from a decision of the Planning Board must be submitted to the Hancock County Superior Court within thirty (30) days from the date of written decision and findings of fact." Gouldsboro, Me., Subdivision Ordinance art. XIV (Mar. 5, 1979).

5. The court nevertheless went on to draw conclusions regarding the other aspects of JPP's appeal.

6. The term "street" is defined in the ordinance as "[p]ublic and private ways such as alleys, avenues, highways, roads, and other rights-of-way, as well as areas on subdivision plans designated as rights-of-way for vehicu-

which then connects to Route 195, the result is one continuous "street," and the dead-end street length limitation is inapplicable.

[¶ 11] Although the term "dead-end" is not specifically defined, the ordinance envisions such a street as terminating at a "closed end." Gouldsboro, Me., Subdivision Ordinance art. X, § C(3)(3)(h). The dictionary definition of "dead end" describes "an end (as of a street, pipe, or power line) that has no exit or continuation." Webster's Third New International Dictionary of the English Language Unabridged 579 (2002).

[¶ 12] We considered the meaning of the term "dead-end" with regard to a subdivision ordinance in *Springborn v. Town of Falmouth*, 2001 ME 57, 769 A.2d 852. There, the relevant ordinance provided that the maximum length of dead-end streets in subdivisions could not exceed 1,500 feet, measured either "from the centerline of [the] feeder street to [the] center of [the] turnaround" or alternatively, "from the point where only one means of access exists and extends over the intervening roadway length(s) to the point of turnaround." *Id.* ¶ 12 n. 4, 769 A.2d at 856. The streets in question formed "two circular drives, connected by a length of roadway," *id.* ¶ 12, 769 A.2d at 856, and we held that the ordinance did not apply because that configuration contained no "point of turnaround" from which to measure, *id.* ¶ 14, 769 A.2d at 857. Because the street design allowed approach of each lot from two different directions, we concluded that this interpretation was "consistent with the purpose of the ordinance to protect public safety by assuring multiple means of access to any property more than 1500 feet from an intersection." *Id.*

[¶ 13] The multiple means of access available in *Springborn* are not available on the proposed Rocky Road. Applying both the words of the ordinance as well as the dictionary and common sense meanings of the term "dead-end," Rocky Road falls within the purview of the road-length limitation. Unlike the road discussed in *Springborn*, Rocky Road fits both the literal and functional "dead-end" condition contemplated by the Gouldsboro Subdivision Ordinance. The road would be longer than 1,000 feet and would terminate at a "closed end," specifically a breakaway gate impeding access to lot owners who do not have deeded access. Even without a gate, lot owners without deeded access to South End Road would be legally prohibited from using the road. Those owners would have no practical access to Route 195 to the east, and would be limited to a single route of ingress and egress that exceeds the maximum length contained in the ordinance. These restrictions bring Rocky Road directly within any common sense meaning of "dead end." *See Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 10, 828 A.2d 768, 771 ("[W]e are not required to disregard common sense when we interpret municipal ordinances.").

[¶ 14] Accordingly, we discern no error in the Board's application of the road-length limitation to JPP's proposed Rocky Road, and we affirm the denial of the subdivision application on that basis.

The entry is:

Judgment affirmed.

---

lar access other than driveways." Gouldsboro, Me., Subdivision Ordinance art. III (Mar. 5, 1979). The ordinance also lists "private right-of-way" as a specific classification of street, defining the term as "[a] minor residential street servicing no more than eight dwelling units, which is not intended to be dedicated as a public way." *Id.*