2009 ME 64

**LAKESIDE AT PLEASANT MOUN-
TAIN CONDOMINIUM ASSO-
CIATION**

v.

**TOWN OF BRIDGTON et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 4, 2009.
Decided: July 7, 2009.

Brendan P. Rielly, Esq., Jensen Baird Gardner & Henry, Portland, ME, for Lakeside at Pleasant Mountain Condominium Association.

Stephen Y. Hodsdon, Esq., Hodsdon & Clifford, LLC, Kennebunk, ME, for Shawnee Peak Holdings, Inc.

Durward W. Parkinson, Esq., Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, ME, for The Town of Bridgton.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Lakeside at Pleasant Mountain Condominium Association (Lakeside) appeals from judgments entered in the Superior Court (Cumberland County, *Warren, J.*) involving an easement on Lakeside's property that provides Shawnee Peak Holdings, Inc. (Shawnee Peak) access to a swim float on Moose Pond.

[¶ 2] First, pursuant to M.R. Civ. P. 80B, Lakeside appeals a judgment of the Superior Court affirming a decision by the Bridgton Board 'of Appeals to uphold a determination by the Town's code enforcement officer (CEO) that Shawnee Peak's use of the float was not commercial, and, therefore, did not violate the local zoning ordinance on that basis. Second, Lakeside argues that the court erred when it denied Lakeside's motion for partial summary judgment on its second count requesting declaratory judgment. In its request for declaratory judgment, Lakeside argued that Shawnee Peak was overburdening the easement as a matter of law by allowing it to be used by guests of an inn that was acquired by Shawnee Peak after the easement was conveyed and is located on property that Shawnee Peak did not own at the time when the easement was conveyed.

[¶ 3] Because Shawnee Peak's use of the float is not commercial as defined by the Town of Bridgton Shoreland Zoning Ordinance, we affirm the judgment of the court affirming the decision of the Board of Appeals. We also affirm the court's

denial of Lakeside's motion for partial summary judgment.

## I.  BACKGROUND

[¶ 4]  Lakeside is a condominium association made up of owners of residential condominium units located on Moose Pond in Bridgton. The property on which the units are located is next to Shawnee Peak, a ski resort formerly owned by a company named Pleasant Mountain. In the summer of 1984, Pleasant Mountain conveyed the property on which the condominium units are located to a company named Northland. In the deed from Pleasant Mountain to Northland, Pleasant Mountain retained a 100–foot–wide easement across Northland's property to Moose Pond. The parties to this appeal agree that the easement was appurtenant to the land then owned by Pleasant Mountain. The deed granted Pleasant Mountain and its successors the perpetual right to use the right-of-way for several uses, including access to and egress from Moose Pond; vehicle and pedestrian travel; the installation of snow-making and water-pumping equipment; and the installation and maintenance of ramps, beaches, docks, or other similar structures reasonably necessary or desirable for Pleasant Mountain's use of Moose Pond.

[¶ 5]  In June 1985, Northland conveyed its property to Lakeside. In September 1988, Pleasant Mountain conveyed its interests, including those in the easement, to Shawnee Peak, which continued to use the easement to draw water from Moose Pond to make snow. Additionally, those who use Shawnee Peak's facilities in the summer for activities such as hiking and camping have used the easement to access the pond for swimming.

[¶ 6]  The Town of Bridgton issued a permit to Shawnee Peak in the summer of 1997 to build a dock that could be used by Shawnee Peak patrons each season from May to September. The following year, Shawnee Peak acquired land and a building adjacent to its resort and opened the Shawnee Peak House, an eleven-bedroom inn. Several years later, in 2004, Shawnee Peak installed a float next to the dock. On its web site, Shawnee Peak advertises that guests of the Shawnee Peak House will have "access to canoes and a swimming dock on beautiful Moose Pond."

[¶ 7]  In June 2005, Lakeside complained to Town officials that residents of Lakeside had noticed a considerable increase in the use of the dock and swim float. At Lakeside's request, the Town's CEO investigated to determine whether Shawnee Peak was violating the Town's Shoreland Zoning Ordinance by making a commercial use of the float, which is located in an area zoned for residential and recreational development only. Determining that Shawnee Peak's use of the float was recreational, the CEO found no violation.

[¶ 8]  Lakeside appealed the decision of the CEO to the Board of Appeals (Board). The Board denied the appeal, reasoning that Shawnee Peak does not derive income by charging separately for the use of the float. Subsequently, Lakeside filed a complaint in Superior Court against Shawnee Peak, and included a count requesting a review of the Board's decision pursuant to M.R. Civ. P. 80B. In affirming the Board's decision, the court reasoned that the float was an accessory use of the Shawnee Peak House, and because Shawnee Peak did not charge guests separately to use it, use of the float could not be commercial because it does not involve "the production of income from the selling of services."

[¶ 9]  Lakeside's other claims against Shawnee Peak included private nuisance, breach of contract, and a request for a declaratory judgment that "Shawnee

Peak's use of the easement to benefit the Shawnee Peak House overburdens the easement and interferes with Lakeside's use and enjoyment of the easement and adjoining area owned by Lakeside." Lakeside filed a motion for partial summary judgment regarding its request for declaratory judgment. In denying the motion, the court distinguished the situation from one where an appurtenant easement is being used improperly to gain access to property acquired after the easement was granted. The court reasoned that guests of the Shawnee Peak resort are using the easement for recreational purposes that appear to be contemplated by the easement, and it stated:

> Whether Shawnee Peak is overburdening the easement or whether its use of the easement is unreasonably interfering with the use and enjoyment of the area by Lakeside residents remains to be decided. But the court cannot see that this issue should turn on where the Shawnee Peak guests or customers are housed.

■ [¶ 10] On December 8, 2008, Lakeside dismissed all of its remaining claims, but reserved the right to appeal the court's decisions on its Rule 80B motion and its motion for partial summary judgment.[1]

## II. DISCUSSION

### A. Rule 80B Appeal

■ [¶ 11] Because the Superior Court acted in an intermediate appellate capacity when reviewing a decision of the Board, we review the decision made by the tribu-

nal of original jurisdiction for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record. *Dowling v. Bangor Hous. Auth.*, 2006 ME 136, ¶ 9, 910 A.2d 376, 380. Here, in considering Lakeside's appeal of the CEO's decision, the Board held a hearing, took testimony, and conducted a de novo review; therefore, we review its decision directly. *See Yates v. Town of Sw. Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. In order to vacate the Board's decision, we must determine that no competent record evidence exists to support the decision. *Dowling*, 2006 ME 136, ¶ 9, 910 A.2d at 380.

■ [¶ 12] Resolving the question of whether Shawnee Peak's current use of the float is commercial requires an interpretation of the Town's Shoreland Zoning Ordinance. Such interpretations are questions of law that we review de novo. *JPP, LLC v. Town of Gouldsboro*, 2008 ME 194, ¶ 8, 961 A.2d 1103, 1105. When interpreting an ordinance, we look first to the plain meaning of the language in the ordinance and give any undefined terms their common and generally accepted meaning unless the context clearly indicates otherwise. *Id.*

[¶ 13] The Shoreland Zoning Ordinance defines commercial use as:

> the use of lands, buildings, or structures, other than a "home occupation," . . . the intent of which activity is the production of income from the buying and selling of goods and services.

---

1. Although we generally do not review denials of motions for summary judgment because they do not meet the final judgment rule, *see Wilcox v. City of Portland*, 2009 ME 53, ¶ 1, 970 A.2d 295, 296, this case presents an exception. After the court denied Lakeside's motion for partial summary judgment, Lakeside dismissed with prejudice all of its re-

maining claims but reserved its right to appeal the Rule 80B judgment and the partial summary judgment decision regarding its request for a specific declaratory judgment that Shawnee Peak was overburdening the easement merely by allowing guests of the Shawnee Peak House to use it. Accordingly, all pending matters were fully resolved.

Town of Bridgton Shoreland Zoning Ordinance, § 17 (June 10, 2003). Additionally, the Ordinance defines accessory use as "a use or structure which is incidental and subordinate to the principal use and structure." *Id.*

[¶ 14] Based upon this plain language, the float meets the Shoreland Zoning Ordinance's definition of accessory use. Although Shawnee Peak House is obviously a commercial enterprise, the same label does not automatically attach to the float. Because Shawnee Peak does not charge separately for the use of the float, that use is not commercial as defined by the Ordinance. Therefore, the Board did not err when it determined that Shawnee Peak's use of the float was not commercial.[2]

## B. Summary Judgment

[¶ 15] We review a decision on a motion for summary judgment de novo, taking the facts in a light most favorable to the non-moving party. *Morgan v. Kooistra*, 2008 ME 26, ¶ 19, 941 A.2d 447, 453. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact ... and that any party is entitled to a judgment as a matter of law." *Id.* (quoting M.R. Civ. P. 56(c)). In this case, the court properly determined that there were no genuine issues of material fact that

were contested, and made its decision as to the legal impact of those uncontested facts.

[¶ 16] An easement is a right of use over the property of another. *O'Donovan v. McIntosh*, 1999 ME 71, ¶ 7, 728 A.2d 681, 683. Shawnee Peak, which owns the dominant estate, has an easement appurtenant over Lakeside's property; the easement was created to benefit the dominant estate and runs with the land. *See id.* However, Shawnee Peak can only exercise the rights granted by the deed for the easement in a reasonable manner. *Mill Pond Condo. Ass'n v. Manalio*, 2006 ME 135, ¶ 6, 910 A.2d 392, 395.

[¶ 17] The rights granted by this easement are:

the perpetual right and easement to use the ... Right–of–Way ... in common with others entitled thereto, for the following uses: (1) access to, and egress from ... the "Pump Bldg."; (2) access to, and egress from, Moose Pond; (3) vehicular and pedestrian travel; (4) the right and easement to install, maintain, use, repair, replace and relocate in, under and above the Right of Way any and all pipes, wires, conduits, poles and other equipment and facilities necessary or desirable in connection with Grantor's snow-making and water-pumping activities; (5) the right and easement to install, maintain, use, repair, replace and construct in, upon, above and under Moose Pond and the shore of Moose

---

**2.** On appeal, both the Town and Shawnee Peak raise issues that were not raised before the Board of Appeals. Shawnee Peak argues that the Bridgton Board of Appeals (Board) did not have jurisdiction to hear Lakeside's appeal of the code enforcement officer's (CEO) decision because the Town's Shoreland Zoning Ordinance does not specifically give the Board jurisdiction to hear appeals of enforcement actions and because Lakeside does not meet the definition of aggrieved party because no permit or variance was granted for the float. Shawnee Peak also argues that Lakeside's appeal to the Board was untimely. Additionally, the Town argues that Lakeside's Rule 80B appeal should have been denied because the swim float is not a "land area," and, therefore, the Town's Shoreland Zoning Ordinance did not even apply. Because Shawnee Peak and the Town did not raise these issues before the Board, the issues are unpreserved and we do not address them. *See Save Our Sebasticook, Inc. v. Bd. of Envtl. Prot.*, 2007 ME 102, ¶ 25, 928 A.2d 736, 743.

Pond, across an area equal to the width of the Right of Way, such ramps, beaches, docks and other like appurtenances as may be reasonably necessary or desirable for Grantor's use of Moose Pond; and (6) the right and easement to install, maintain, use, repair and relocate below the water line of Moose Pond across an area equal to the width of the Right of Way any and all pipes, wires, conduits, poles and other equipment and facilities necessary or desirable in connection with Grantor's snow-making and water-pumping activities or use of Moose Pond.

[¶ 18] Permitting its guests and invitees, who happen to be staying at the Shawnee Peak House, to use the easement to access Moose Pond for activities such as snowmaking and swimming, is contemplated by the easement. Interpreting this permitted use to allow persons staying at the inn to use the easement is, as the trial court noted, distinguishable from the extension of an easement that occurs when the owner of the dominant estate uses the easement to access after-acquired parcels without the consent of the owner of the servient estate. *See McLaughlin v. Bd. of Selectmen,* 422 Mass. 359, 662 N.E.2d 687, 691 (1996); *see also Casper F. Cowan & J. Gordan Scannel Jr., Maine Real Estate Law & Practice* § 8.1 (2007). The language used to create this easement expressly allows Shawnee Peak the right "to install, maintain, [or] use ... in, upon, above and under Moose Pond and the shore of Moose Pond, across an area equal to the width of the Right of Way, such ramps, beaches, docks and other like appurtenances as may be reasonably necessary or desirable for [Shawnee Peak's] *use* of Moose Pond." (Emphasis added). Thus, the court correctly decided, given the language of the easement, that the use of the easement by those Shawnee Peak guests or invitees who stayed at the inn

was not a per se overburdening of the easement.

[¶ 19] In order to prevail on its action against Shawnee Peak, Lakeside would have had to show that the increase in the use of the easement caused by this interpretation had exceeded the use contemplated by the original parties to the easement. However, in the stipulation filed to allow it to appeal from the court's order, Lakeside waived this argument by agreeing that it was not claiming that the actual use of the easement by Shawnee Peak constituted an overburdening based on the number of users or frequency of use.

The entry is:

Judgments affirmed.