MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 96
Docket:      Cum-19-348
Submitted
  On Briefs: April 14, 2020
Decided:     July 7, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.
Majority:    MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Dissent:     CONNORS, J.

MARK TOMASINO et al.

v.

TOWN OF CASCO et al.


GORMAN, J.

[¶1]  Mark and Valerie Tomasino appeal from a judgment of the Superior Court (Cumberland County, *Horton, J.*) entered pursuant to M.R. Civ. P. 80B, affirming the decision of the Town of Casco Zoning Board of Appeals in which the Board denied the Tomasinos' request for a shoreland zoning permit.  The Tomasinos challenge the Board's determination that they demonstrated insufficient right, title, or interest in the property at issue to obtain a permit to remove three trees from property owned by the abutting property owner, the Lake Shore Realty Trust, over which the Tomasinos claim a deeded easement. We affirm the judgment.

## I. BACKGROUND

[¶2] Mark and Valerie Tomasino own property on Sebago Lake in Casco. The Trust owns abutting property. Both parcels are on a private road created by deeds granting each owner "a right of way over a strip of [the other's] land six (6) feet in width" along a portion of their common boundary.

[¶3] In 2017, the Tomasinos obtained a building permit from the Town of Casco to remove the existing home from their property and construct a new home in its place. *See* Casco, Me., Code § 215-6.1(A) (June 14, 2017). In 2018, the Tomasinos applied for and obtained from the Town's Code Enforcement Officer (CEO) a shoreland permit to remove three trees from Trust land that is subject to the Tomasinos' access easement in order to establish a gravel road to their new home as required to obtain a certificate of occupancy.[1] On the Trust's appeal to the Zoning Board of Appeals, the Board vacated the CEO's grant of the permit.[2] *See* Casco, Me., Code §§ 215-6.3(A)(1)(a), 215-9.36(G)(1)(a), (8)(a)(1) (June 14, 2017).

---

[1] The record does not establish what provision required the Tomasinos to obtain a permit to remove the trees or what provision stated that removal of those three trees was necessary to obtain a certificate of occupancy.

[2] The Board initially determined that the Trust's appeal was not timely. At the CEO's behest, the Board reconsidered its decision and agreed to review the appeal on the merits.

[¶4]   On the Tomasinos' appeal of the Board's decision, the Superior Court remanded the matter to the Town for further findings and conclusions regarding the basis of the Board's decision. *See* M.R. Civ. P. 80B(m). On remand, the Board made findings about the sizes and locations of the three trees at issue, as well as that "[t]he easement is unclear as to the rights of the parties to cut trees without the other party's permission. No evidence was presented to the Board to definitively resolve this issue." On this basis, the Board concluded, "[T]he permit was not properly issued because two of the trees were located partially outside the easement area and on property owned exclusively by [the Trust] and it was unclear whether the Tomasinos had the right to remove the third tree without the agreement of [the Trust]." With a supplemented record, the court affirmed the Board's decision, and it denied the Tomasinos' post-judgment motion to amend the judgment and to reconsider.[3]   *See* M.R. Civ. P. 59(e). The Tomasinos appeal.

---

[3] In doing so, the Superior Court appears to have made its own findings of fact as to the location of the three trees based on an exhibit never submitted to the Board—the "TREE TRUNK PLAN." In so doing, the court acted beyond its authority, which was limited to reviewing the Board's decision in an appellate capacity. *See* 30-A M.R.S. § 2691(3)(G), (4) (2020); M.R. Civ. P. 80B(f) ("Except where otherwise provided by statute or by order of court . . . , review shall be based upon the record of the proceedings before the governmental agency."); *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 9, 879 A.2d 1007 ("[T]he Superior Court's subject matter jurisdiction to conduct appellate review pursuant to Rule 80B is firmly established in statute."). The Superior Court's errors are harmless, however, given that we directly review the decision of the Board. *See* M.R. Civ. P. 61; *Lakeside at Pleasant Mountain Condo. Ass'n v. Town of Bridgton*, 2009 ME 64, ¶ 11, 974 A.2d 893; *Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 9 n.3, 973 A.2d 735 (noting that the court's

4

## II. DISCUSSION

[¶5]  Because the Superior Court acted in its intermediate appellate capacity, we review directly the operative decision of the municipality. *See Lakeside at Pleasant Mountain Condo. Ass'n v. Town of Bridgton*, 2009 ME 64, ¶ 11, 974 A.2d 893.  Here, the operative decisions were those issued by the Board, which acted de novo in considering the Trust's appeal of the CEO's grant of the shoreland permit.  *See* 30-A M.R.S. § 2691(3)(C) (2020); Casco, Me., Code §§ 215-6.3(A)(1)(a), 215-9.36(G)(1)(a); *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 8, 868 A.2d 161.  We therefore review the Board's decisions for errors of law, findings not supported by substantial evidence in the record, or an abuse of discretion, and we review the Board's interpretation of municipal ordinances de novo as a matter of law.  *See Fryeburg Tr. v. Town of Fryeburg*, 2016 ME 174, ¶ 5, 151 A.3d 933.  Further, "[a]s the party seeking to overturn the [Board's] decision, [the Tomasinos have] the burden of establishing that the evidence compels a contrary conclusion." *Leake v. Town of Kittery*, 2005 ME 65, ¶ 7, 874 A.2d 394 (quotation marks omitted).

---

misstatement in a Rule 80B decision was harmless error because the municipal board's decision was reviewed directly).

[¶6] The Town's ordinance requires that "[a]ll applications [for permits] . . . be signed by an owner or individual who can show evidence of right, title or interest in the property or by an agent, representative, tenant, or contractor of the owner with authorization from the owner to apply for a permit." Casco, Me., Code § 215-9.36(C)(2) (June 14, 2017). The crux of this appeal is the Tomasinos' argument that the Board erred by concluding that they failed to demonstrate that minimum right, title, or interest in the property on which the three trees are located. They argue that, as a matter of law, the only facts necessary to establish sufficient right, title, or interest to remove the three trees are that the trees are located on property on which they claim some easement rights.

[¶7] We disagree. As the Board found, the scope of the Tomasinos' deeded easement over the Trust's property is not established in this record; as an evidentiary matter, the language of the deeds does not disclose whether and to what extent the easement includes the right to remove trees, and, as a procedural matter in this municipal zoning case, the Trust has challenged the Tomasinos' right to remove the trees. Determining the scope of an easement requires an interpretation of the parties' respective deeds in light of relevant statutory provisions and case law. *See Flaherty v. Muther*, 2011 ME 32, ¶ 55,

17 A.3d 640 (stating that the terms of an easement are determined as a matter of law based on deed construction or, if the deed language is ambiguous, as a matter of fact based on extrinsic evidence of the parties' intent in the creation of the easement); *Stickney v. City of Saco*, 2001 ME 69, ¶ 33, 770 A.2d 592 (providing that deeds are construed based on the "law existing at the time [the deed] was made"). These are matters that are well outside the Board's jurisdiction, authority, or expertise, which is instead limited to the interpretation and application of ordinance provisions. *See* 30-A M.R.S. § 2691(4) (2020) ("No board may assert jurisdiction over any matter unless the municipality has by charter or ordinance specified the precise subject matter that may be appealed to the board and the official or officials whose action or nonaction may be appealed to the board."); Casco, Me., Code § 215-9.36(G)(1) (stating that the Board has the power to decide only "[a]dministrative appeals" and "[v]ariance appeals"); *Cope v. Town of Brunswick*, 464 A.2d 223, 225 (Me. 1983) (stating that "local zoning boards, like municipalities, have no inherent authority to regulate the use of private property" and are instead limited to those powers conferred upon the town by the State); *Inhabitants of the Town of Boothbay Harbor v. Russell*, 410 A.2d 554, 560 (Me. 1980) (noting that Boards of Appeals perform an adjudicatory function "within [a] limited jurisdiction").

[¶8]  Indeed, as the Town reminded the Tomasinos throughout this litigation, a municipal zoning case is not the proper forum for a private property dispute between neighbors, and a private property dispute between neighbors is precisely what was before the Board here.  *E.g., Rockland Plaza Realty Corp. v. La Verdiere's Enters., Inc.*, 531 A.2d 1272, 1273-74 (Me. 1987) ("[T]he Planning Commission was not the proper forum to determine existing property rights in the narrow strip of land and consequently the Superior Court was not in a position to entertain the issue on a Rule 80B appeal."); *Cunningham v. Kittery Planning Bd.*, 400 A.2d 1070, 1078-79 (Me. 1979) (stating that the purpose of a municipal board hearing was "to give the public an opportunity to present facts . . . for its consideration in reviewing the subdivision application and not for the purpose of adjudicating private rights" (quotation marks omitted)); *Whiting v. Seavey*, 159 Me. 61, 67, 188 A.2d 276 (1963) ("The rights and obligations of parties to private covenants are to be determined in appropriate actions to enforce or to be relieved of the burden of, such covenants; they are not to be determined by reference to the zoning restrictions applicable to the land . . . ." (quotation marks omitted)).

8

[¶9]  Moreover, the Tomasinos' reliance on authorities[4] to argue that, as a matter of law, they are entitled to remove trees from the Trust land over which they hold a deeded easement are precisely the arguments they could have made in a declaratory judgment action against the Trust.  It is not clear, given the guidance from the Town, why the Tomasinos have filed no such action, either on its own or as an independent claim in conjunction with their appeal to the Superior Court.  *See* M.R. Civ. P. 80B(i).

[¶10]  Although the dissent relies on certain sources to support the proposition that the Tomasinos' deeded easement was sufficient as a matter of law to establish the requisite right, title, or interest, those authorities are easily distinguished.  Dissenting Opinion ¶¶ 19-23.  In *Walsh v. City of Brewer*, the plaintiff sought municipal approval as to a parcel of property that he claimed no title to nor any easement over.  315 A.2d 200, 205 (Me. 1974).  The crux of our holding was that, in the absence of any evidence of *any* legally cognizable

---

[4] Notably, the authorities on which the Tomasinos rely also involved private litigations between property owners rather than appeals of municipal zoning decisions. *E.g., Love v. Klosky*, 417 P.3d 862, 863 (Colo. App. 2016) (involving a matter in which one set of landowners sued their adjoining neighbors regarding their competing rights to the common boundary); *Sleeper v. Loring*, 2013 ME 112, ¶ 9, 83 A.3d 769 (consisting of a Rule 80B appeal *and* an independent declaratory judgment claim); *Stanton v. Strong*, 2012 ME 48, ¶ 7, 40 A.3d 1013 (involving a nuisance and trespass complaint requesting injunctive relief, a declaratory judgment, and punitive damages, as well as a counterclaim alleging trespass and seeking a declaratory judgment); *DeHaven v. Hall*, 753 N.W.2d 429, 434 (S.D. 2008) (involving a complaint seeking declaratory relief and damages).

ownership interest in the property and without sufficient evidence that he had any fiduciary relationship with the property owners to allow him to seek a municipal permit on their behalf, the plaintiff lacked any right, title, or interest in the property to seek such municipal approval. *Id.* at 206-08. This holding is in no way inconsistent with our conclusion in the present matter.

[¶11] Notably, in *Walsh*, we stated that the requisite right, title, or interest in property to confer administrative standing before a municipal board was the "lawful power to use [the property], or control its use" in the manner sought through the municipal action. *Id.* at 207 ("More concretely, the question is whether plaintiff had the kind of relationship to the [property] which the . . . ordinances recognized as *sufficiently germane to the scope of their regulation* . . . ." (emphasis added)). We reached the same conclusion in *Murray v. Inhabitants of the Town of Lincolnville*, in which we held that a person who has executed a contract for the purchase of property has a sufficient right, title, or interest in that property to seek municipal approval for the development of the property. 462 A.2d 40, 41, 43 (Me. 1983). We stated, "An applicant for a license or permit to use property in certain ways must have the kind of relationship to the site that gives him a *legally cognizable expectation of having the power to use that site in the ways that would be authorized by the permit or license he*

*seeks.*" *Id.* at 43 (emphasis added) (citation omitted) (quotation marks omitted). In *Murray*, there was no issue regarding whether the plaintiff, after obtaining the requisite approvals, would have the ability to subdivide property to which he would hold title ownership; the issue was instead whether his interest obtained through the purchase and sale agreement was sufficiently concrete given that he and the seller had not yet executed the agreement. *See id.* at 43-44.

[¶12] In *Rancourt v. Town of Glenburn*, we again focused the inquiry on whether the applicant demonstrated a right, title, or interest to do the particular acts on the property for which she sought municipal approval. 635 A.2d 964, 965-66 (Me. 1993). In that matter, the applicant sought a permit to place a dock on property over which she claimed a right of way. *Id.* at 965. We concluded that the applicant did not establish that the scope of her right of way included the ability to construct a dock on the property and that the municipal board therefore correctly determined that she had not satisfied the right, title, or interest requirement to allow her permit application to proceed. *Id.* at 966. Our conclusion—that the applicant must demonstrate not just any right, title, or interest in the property but a right, title, or interest in the property

that allows the property to be used in the manner for which the permit is sought—is consistent with these three decisions.

[¶13]  Finally, title ownership was again at issue in *Southridge Corp. v. Board of Environmental Protection*, in which we concluded that a pending action claiming ownership by adverse possession was sufficient to confer standing to seek state regulatory permits for the property at issue.  655 A.2d 345, 347-48 (Me. 1995); *see Fissmer v. Smith*, 2019 ME 130, ¶¶ 1, 28, 214 A.3d 1054 (discussing adverse possession as a means of obtaining ownership).

[¶14]  In sum, our decisions in *Walsh*, *Murray*, and *Southridge Corp.* involved the question of whether the applicants had sufficient connections to the *title* to the properties to seek municipal or agency permits on those properties, and in each case, there was no question but that the title owner of the property, once its identity was established, would be able to make use of the property as permitted according to applicable ordinances and statutes. *Southridge Corp.*, 655 A.2d at 348; *Murray*, 462 A.2d at 43; *Walsh*, 315 A.2d at 205, 207-08.  In *Rancourt*, the matter that did not involve title, we held that the claimed right of way was insufficient to establish a right, title, or interest to construct the dock on the property for which the applicant sought approval. 635 A.2d at 965-66.

12

[¶15]  Thus, none of these decisions supports the proposition that administrative standing may be conferred merely by possessing any kind of easement on the property at issue.  Unlike title owners, easement owners are subject to a second layer of necessary authority—what the easement itself allows—in addition to what the applicable ordinances and statutes allow.  In this matter, even assuming that the Tomasinos demonstrated that they had *some* interest in the particular portion of property at issue, they failed to demonstrate that they have the kind of interest that would allow them to cut the trees if they were granted a permit to do so.  Whatever minimum "right, title or interest" is required by ordinance, Casco, Me., Code, § 215-9.36(C)(2), we conclude that, in the face of a dispute between private property owners, that requirement is not met by an easement whose parameters have not been factually determined by a court with jurisdiction to do so. We therefore discern no error in the Board's refusal to grant the Tomasinos a shoreland zoning permit to cut trees located wholly or partially on the disputed property.[5]

---

[5] We are not persuaded by the Tomasinos' additional arguments—that the Board lacked jurisdiction or authority to consider the Trust's initial appeal or to reconsider its initial decision at the CEO's suggestion; that the Board committed multiple violations of the Freedom of Access Act, 1 M.R.S. §§ 400-414 (2020); that the Board should have considered whether the Tomasinos' request to remove the trees was reasonable; and that the Board's findings on remand are not supported by substantial evidence in the record—and we decline to address those arguments further.  *See* 30-A M.R.S. § 2691(3)(C), (F) (2020); *Dubois v. Town of Arundel*, 2019 ME 21, ¶ 4, 202 A.3d 524;

The entry is:

Judgment affirmed.

_____

CONNORS, J., dissenting.

[¶16]  I agree with the Court's well-supported statement in this case that "a municipal zoning case is not the proper forum for a private property dispute between neighbors."  Court's Opinion ¶ 8.  I also agree with the Court that resolving complicated questions of property law—such as the proper interpretation of deed language—is outside of "the Board's jurisdiction, authority, or expertise."  Court's Opinion ¶ 7.  I dissent because the logical conclusion from this reasoning is not affirmance of the legal conclusion of the Board of Appeals that the Tomasinos lack standing to seek a permit, but the contrary.

[¶17]  The Tomasinos, without dispute, hold a property interest in the form of an easement.  That interest arguably gives them the right to cut down the trees in question under Maine property law.  To probe beyond the face of the easement, and rule it insufficient for standing purposes, requires an

_____

*Fryeburg Tr. v. Town of Fryeburg*, 2016 ME 174, ¶ 5, 151 A.3d 933; *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶ 17, 122 A.3d 947.

analysis of Maine property law by the Board of Appeals properly deemed by the majority as beyond the scope of the administrative body's standing review.

[¶18]  We should start, as always, with the relevant legislative language. *See MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶ 8, 214 A.3d 1. This ordinance requires a permit application to "be signed by an owner or individual who can show evidence of right, title or interest in the property." Casco, Me., Code § 215-9.36(C)(2) (June 14, 2017).  Notably absent from this language is any requirement that this evidence be irrefutable or unchallenged. Such language is omitted for good reason.  Because of its underlying purpose, administrative standing requires less evidence of "right, title or interest" than might be required to establish such property rights definitively in a court of law.

[¶19]  The ordinance codifies our holding in several cases that, for standing purposes, an applicant must show that he or she "has an independently existing relationship to [the] regulated land in the nature of a 'title, right or interest' in it which confers lawful power to use it, or control its use." *Walsh v. City of Brewer*, 315 A.2d 200, 207 (Me. 1974).  Put another way, the applicant must "have the kind of relationship to the site that gives him [or her] a legally cognizable expectation of having the power to use that site in the ways that would be authorized by the permit or license he [or she] seeks."

*Murray v. Inhabitants of the Town of Lincolnville*, 462 A.2d 40, 43 (Me. 1983) (alteration omitted) (citation omitted) (quotation marks omitted).

[¶20]  We have explained that administrative standing "is intended to prevent an applicant from wasting an administrative agency's time by applying for a permit or license that he [or she] would have no legally protected right to use." *Id.*; *see also Walsh*, 315 A.2d at 207 n.4 ("[G]overnmental officials and agencies should not be required to dissipate their time and energies in dealing with persons who are 'strangers' to the particular governmental regulation and control being undertaken.").  Accordingly, "whatever the applicant relies on for his [or her] authority to use the land in the ways permitted by the permit he [or she] seeks must be legally enforceable and not revocable 'at any moment, at the will of the owners.'" *Murray*, 462 A.2d at 43 (quotation marks omitted).

[¶21]  That is not to say, however, that administrative standing represents a particularly high bar for applicants.  In *Murray*, for example, we held that a purchase and sale agreement conditioned upon the seller's acquisition of any necessary subdivision approval conferred upon the purchasers sufficient interest to petition a local planning board and the Board of Environmental Protection for approval of their proposed condominium development. *Id.* at 41.  We said that the fact that the purchasers "could opt out

of the purchase under certain circumstances does not deprive them of standing, any more than the owner of property in fee simple could be said to lack standing because he has the right to sell his land at any time." *Id.* at 43.

[¶22] Extending this reasoning even further, we held in *Southridge Corp. v. Board of Environmental Protection* that an applicant with a pending adverse possession suit had "sufficient title, right or interest" to seek a permit for a septic system that had "existed on the disputed parcel for a long period of time." 655 A.2d 345, 346-348 (Me. 1995). We explained,

> We fully acknowledge that it is possible that [the applicant] may not prevail in his adverse possession claim to the [disputed] property. Should this happen, his permit might be revoked. This possibility, however, neither deprives [the applicant] and those he represents of their current interest in the land nor their administrative standing.

*Id.* at 348.

[¶23] What our holding in *Southridge* makes clear, then, is that unresolved property law disputes have no bearing on the administrative standing analysis—i.e., that an applicant can have sufficient right, title, or interest to seek a permit even if there is a possibility that a court might determine otherwise in a different context. This is consistent with the purpose of administrative standing, which is not to ensure that an applicant has an unassailable right to engage in the permit-requiring activity, but rather to

ensure that they have a "legally cognizable expectation" of being able to do so, such that the permitting process is not a waste of time. *Murray*, 462 A.2d at 43; *Walsh*, 315 A.2d at 207 & n.4; *see also Cognizable*, Black's Law Dictionary (11th ed. 2019) (defining cognizable to mean "[c]apable of being known or recognized").

[¶24] The Court attempts to distinguish *Murray* and *Southridge* from the present case by suggesting that the holdings from those cases only apply to applicants with sufficient connections to the *title* of the property at issue. Court's Opinion ¶¶ 11, 13-14. Such a narrow reading of those two cases, however, is inconsistent with our case law as well as the language of the ordinance in this case, both of which allow administrative standing to be shown through evidence of *right*, title, *or interest*. By elevating title ownership above other property rights or interests, the Court creates an unwarranted distinction; just like the easement at issue here, a person's title can, and often does, stem from less-than-clear deed language that may require legal parsing. Similarly, a title-holding applicant may nevertheless be "subject to a second layer of necessary authority," Court's Opinion ¶ 15, if the land for which he or she seeks a permit is subject to an easement or restrictive covenant. *Cf. Whiting v. Seavey*, 159 Me. 61, 62-69, 188 A.2d 276 (1963) (affirming the decision of a

local board permitting an applicant to operate a boat yard despite the assertion of neighboring property owners that his doing so violated restrictive covenants in their deeds).

[¶25]  If title is subject to all the same pitfalls as other property rights or interests, why should it be the litmus test of administrative standing?  And if disputed title is sufficient to establish standing, *see Southridge Corp.*, 655 A.2d at 348, why is a disputed easement insufficient?  The Court does not point to anything in the ordinance language or the underlying purpose of administrative standing to support its position.

[¶26]  To the extent the Court relies on *Rancourt v. Town of Glenburn*, 635 A.2d 964 (Me. 1993), to reach its decision, it should not.  In *Rancourt*, we affirmed a decision of a local board determining that an applicant failed to meet her burden of establishing sufficient legal interest in a right-of-way to entitle her to apply for a permit to place a dock thereon.  *Id.* at 965-66.  We noted that the deed language describing the applicant's right-of-way did not indicate whether it included "the right to place a dock at the end of" it and held that the applicant lacked administrative standing because she had failed to resolve this ambiguity by presenting any evidence to the board that the right-of-way was originally intended to allow such placement.  *Id.*  In so holding, we implicitly

suggested that the issue of the right-of-way's scope was properly before the board, contravening our previous holding—which the Court reiterates here—that a municipal board is "not the proper forum to determine existing property rights" and that courts are not in a position to entertain such issues in M.R. Civ. P. 80B appeals. *Rockland Plaza Realty Corp. v. LaVerdiere's Enters.*, 531 A.2d 1272, 1273-74 (Me. 1987).

[¶27] Similar to our decision in *Rancourt*, I worry that the Court's holding today invites, rather than discourages, municipal boards to wade into private property disputes and will result in needlessly protracted proceedings involving squabbling neighbors. I am also concerned that the holding will create unnecessary conflict by forcing easement holders to actively litigate the scope of their easements before seeking what might have otherwise been unchallenged permits.

[¶28] To avoid these problems, and to be more consistent with the language of the ordinance and the purpose of administrative standing, I would hold that some evidence of a legally cognizable—i.e., colorable; not plainly inadequate—expectation is enough to show "right, title or interest" for the purpose of seeking a permit.[6] Doing so would (1) keep the administrative

---

[6] Contrary to the Court's characterization of my position, I do not suggest that *any* legally cognizable interest is sufficient to establish administrative standing. Court's Opinion ¶ 12. Clearly,

standing analysis relatively simple for lay boards, and (2) make it clear that a dispute over property rights should be brought before a court with the actual authority and expertise to resolve the dispute.

[¶29]   Applying that framework, the Tomasinos' easement gave them sufficient interest to petition the Board for permission to cut down trees interfering with their use of that easement, and the Board therefore erred in refusing to grant their permit on that basis. *See Murray*, 462 A.2d at 43; *Walsh*, 315 A.2d at 207 & n.4.  The Trust's remedy lies in a separate action to construe the easement.[7] *See Rockland Plaza Realty Corp.*, 531 A.2d at 1273-74; *Whiting*, 159 Me. at 67-68, 188 A.2d 276.  And the fact that a court, when squarely presented with the issue, might determine that the Tomasinos' easement does not permit them to remove the trees at issue does not alter the Tomasinos' administrative standing—they are not strangers to the land or activity at issue and their permit application is not a waste of time any more than the application at issue in *Southridge* was.  *See Southridge Corp.*, 655 A.2d at 348.

---

the Tomasinos would not have a legally cognizable expectation of being able to cut down the trees if, for example, the language of their easement expressly prohibited them from doing so.

[7]  The grant of the permit in this case would not give the Tomasinos the absolute right to cut down the trees, and the Trust could still seek damages if they did so or request an injunction to prevent them from doing so while the scope of the easement is litigated.

Chris Neagle, Esq., Troubh Heisler LLC, Portland, for appellants Mark and Valerie Tomasino

Natalie L. Burns, Esq., Jensen Baird Gardner & Henry, Portland, for appellee Town of Casco

David A. Goldman, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Colleen E. Demirs, trustee, Lake Shore Realty Trust

Cumberland County Superior Court docket number AP-2018-60
FOR CLERK REFERENCE ONLY