STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. AP 20-07


BARRY MACKAY


v.                                                DECISION

TOWN OF RAYMOND *et al*

Before the court is the Plaintiffs' appeal of a decision by the Town of Raymond ("Town")

Planning Board approving the application of party in interest Port Harbor Holdings I, LLC (Port

Harbor" to extend a dock system in Sebago Lake. The Plaintiffs own condominiums in the

adjacent Indian Point condominium development ("Indian Point") Port Harbor and are members

of the condominium association (IPOA). For the reasons stated below, the matter is referred back

to the Planning Board for further findings of fact with respect to "visual access." In all other

respects, the Planning Board's decision is affirmed.

## BACKGROUND

Port Harbor applied to the Town Planning Board to expand its dock system. The new

dock system system expands an existing 77 slip marina to 116 slips. The project would include

12 new piles to support two new docks with supporting finger docks. Indian Point's common

area includes a beach area supporting swimming and boating. The beach area is immediately

adjacent to the expanded dock system.

After hearings on February 12, March 11 and June 10, 2020, the Planning Board

approved the project subject to conditions. Two of the individual condominium owners appealed

the Planning Board's decision. Their appeal is on several grounds.

1

DISCUSSION

On appeal, the Court's review of administrative decision-making is deferential and limited. The Superior Court reviews a local agency's decision for abuse of discretion, errors of law, and findings not supported by the evidence. *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768. The Plaintiffs bear the burden of persuasion on appeal because they seek to vacate the Planning Board's decision. *Fitanides v. City of Saco*, 2015 ME 32, ¶ 8, 113 A.3d 1088.

A court will review local interpretations of local ordinances de novo as a question of law. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The court interprets an ordinance for its plain meaning and construes its terms reasonably in light of the purposes and objectives of the ordinance and its general structure. *Grant v. Town of Belgrade*, 2019 ME 160, ¶ 14, 221 A.3d 112. If an ordinance is clear on its face the court will look no further than its plain meaning. Local characterizations or fact-findings as to what meets ordinance standards are accorded "substantial deference." *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684; *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 9, 828 A.2d 768.

Upon review of an agency's findings of fact, when the appellant did not have the burden of proof before the agency, the court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lakes v. Bd. of Env'l Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128. "The court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S. § 11007(3). The Law Court, or the Superior Court, will affirm findings of fact if they are supported by "substantial evidence in the record", even if the record contains inconsistent evidence

or evidence contrary to the result reached by the agency. *Passadumkeag Mountain Friends v. Bd. of Environmental Prot.*, 2014 ME 116, ¶¶ 12, 14, 102 A.3d 1181. The municipal board's findings of fact will be vacated only if there is no competent evidence in the record to support a decision. *Lakeside at Pleasant Mountain Condo. Ass'n v. Town of Bridgton*, 2009 ME 64, ¶ 11, 974 A.2d 893.

## 1. Proper notice.

The Plaintiffs argue they did not receive proper notice of the first Planning Board meeting addressing the project. The record shows that notice of the February 12 meeting was sent to the IPOA in the form of a letter to an individual who was no longer connected to the IPOA. Nevertheless, several condominium owners, including Plaintiff MacKay, attended the meeting and were heard, albeit on short notice. The Planning Board held a second meeting. Apparently proper notice was provided and both Plaintiffs attended. In addition, an attorney made a presentation on behalf of the IPOA.

Due process concerns are not implicated if a failure to comply strictly with notice requirements does not result in prejudice. *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶15. Here, the Plaintiffs have not demonstrated any prejudice as a result of the any error in the Town's notice of the Planning Board meetings. One of the Plaintiffs showed up to the February 12 hearing and both attended the March 11 hearing. Counsel spoke on behalf of Indian Point residents on March 11. Therefore, regardless of the initial problems with notice to abutters, the Plaintiffs have not persuaded the court they did not have a right to be heard.

## 2. Visual points of access

The Plaintiffs argue that the project imposes a visual impact on their view from the beach. The ordinance requires the Planning Board to make a "positive finding" that the

3

proposed use "will conserve . . visual, as well as actual, points of access to inland waters." Ord. § 16(D)(5). The court is not aware of any additional ordinance language bearing on "visual points of access." At one point in the proceedings, the Board asked for legal advice from the attorney who told them: "generally" the language applies to public views instead of private views and that a condominium complex was a private view. Tr. Mar 11, 93.

Here, the Planning Board found that: "No visual buffers will be impacted by the proposed project." It is not clear from their findings how they applied the ordinance to the facts in evidence.

The court cannot say, as a matter of law, that the ordinance language applies only to public views. State law mandates the Town's enactment of a Shoreline Zoning Ordinance. 38 MRS § 435. The language of Raymond's ordinance is lifted directly from the state statute. *Compare,* SZO, §16 with 38 MRS § 435. Both the ordinance and the statute, read as a whole, protect both private and public interests. Neither party points the court to any case law interpreting either provision. The DEP regulations cited in Port Harbor's brief do not directly flow from Section 435 and are not persuasive. There is no distinction between public and private views in the language of the ordinance.

If supported by evidence in the record, the court must defer to the Planning Board as to whether "visual points of access are conserved." The Planning Board has discretion to place more weight on public views than private views. The Board can weigh the size and type of location that a view is disrupted and the size and type of the disruption. It is a highly factual inquiry.

Here, there is evidence that the marina expansion substantially impacts the view from the IPOA's beach. There is no evidence of any visual impact from any other location. There is also

4

evidence the impact may not vilate the ordinance. Unfortunately, the court cannot tell from the findings of fact what the Board meant by "visual buffers," what the Board found with respect to visual impact, and how the Board applied the ordinance to their findings. The court cannot tell if the Board improperly applied the ordinance. Without sufficient findings of fact, the "reviewing court cannot effectively determine if an agency's decision is supported by the evidence, and there is a danger of judicial usurpation of administrative functions." *Appletree Cottage, LLC v. Town of Cape Elizabeth*, 2017 ME 177, ¶ 9. Here, the court remands the matter back to the Planning Board for further findings and application of the law consistent with this decision.[1]

### 3. Number of docks.

The expansion project requires two new docks and a number of "finger docks." The Plaintiffs argue that a project with this amount of water frontage cannot contain more than one dock. SZO § 15(C)(1). Port Harbor argues that Section 15(C)(1) does not apply to marinas.

Port Harbor also argues that the issue was raised on appeal. To preserve an issue for appeal, a party must raise the objection before the adjudicating authority in a manner that allows the adjudicating authority to address the issue initially, before the issue is addressed on appeal. *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 5. A party is deemed to have raised and preserved an objection if "there was a sufficient basis in the record to alert the [board] and any opposing party to the existence of that issue." *Brown v. Town of Starks*, 2015 ME 47, ¶ 6.

Plaintiffs point to two locations in the March 12 transcript where they contend the issue was raised. At page 10, IPOA's counsel mentioned several subsections of 15C, but made no mention of Section 15C(1) or any limit on the number of docks. Tr. Mar. 12, p. 10. The court sees nothing on page 67 of the March 12 transcript that demonstrates that the issue was raised

---

[1] The court does not address Port Harbor's argument that the ordinance is impermissibly vague as that issue is not currently before the court.

5

below. The Findings of Fact addressed another aspect of 15C(1), but not the number of docks. R. 4. The court finds that there is not a sufficient basis in the record to alert the Board of the Plaintiff's interpretation of Section 15C(1) that the ordinance limited the applicant to one dock. Therefore, the issue was not preserved for appeal.

### 4. Public Safety, Interference with Beach Area, and Size of Project.

These are all factual determinations by the Planning Board and the court must defer to the Board's findings. There is factual support for many of the Plaintiffs assertions. For example, the marina is close to the IPOA beach. Boats are sometimes operated erratically. There is evidence of an adverse impact on the beach. On the other hand, there is evidence that would support a finding that the new docks would not unreasonably impact public safety, interfere with the beach, or is not inappropriately sized. It is located within the littoral boundaries of the Port Harbor properties and there are plans to mark the boundary with buoys. The Law Court has been clear that it is not this court's role to weigh evidence. The Board conducted a view, listened to competing testimony and determined that the project met the ordinance's requirements. There is adequate evidence in the record to support those conclusions.

### 5. Delegation of Authority to the DEP.

The Planning Board accepted the findings of the DEP as factual findings when determining whether the project impacted fisheries or wildlife and whether the piles would have a significant environmental impact if the applicant complied with DEP conditions. When determining common or overlapping issues that have been investigated by the DEP, the Planning Board has the discretion to weigh the DEPs findings heavily. As with any evidence, the Board has the discretion to decide the issues solely on the evidence of the DEP findings if the Board finds it persuasive in light of all the other evidence. Given the State agencies' greater expertise and resources on these issues,

6

reliance on their findings is not inappropriate. While the Planning Board has the discretion to decide differently, it also has the discretion to rely on DEP's findings. Looking at the evidence as a whole, the court is persuaded that the Board's findings with respect to the project's impact on fisheries, wildlife and the environment have sufficient support in the record.

In this case, there was no compelling evidence that the project would impact fisheries or wildlife, or otherwise impact the environment. Therefore, the court cannot say that the Planning Board acted outside its discretion when deciding those issues based on the DEP findings.

## 6. Bias and Procedural Irregularities

Here, the Plaintiffs allege that the Chair of the Board was biased in favor of the project. They argue that his procedural rulings and comments during the proceedings reflected that bias. Specifically, they claim the Chair expressed disdain for the views of the project opponents during the public hearing, for the ordinance requirements and for dissenting Board members. They claim he pushed approval of the project.

"A party before an administrative board is entitled to a fair and unbiased hearing under the Due Process Clauses of the United States and Maine Constitutions." *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 29. When considering whether a board chair is biased, the court must consider that the board chair has authority to regulate the process, including the speaking time of witnesses. *Id.* ¶ 30. Furthermore, a board chair can support a project as long as his conduct at the meetings was unbiased or that he participated in them from a standpoint of predisposition. *Id.* ¶ 29.

The court has read the transcripts of the three hearings. Chair O'Neill's comments could be interpreted as though he was a supporter of the project. The court does not find, however, that his conduct of the meeting was biased or otherwise inappropriate. The couple of efforts he made

7

to limit speakers were directed towards keeping the meeting moving. The court finds that the chair's conduct of the meetings did not violate the Plaintiff's due process rights.

The Entry is:

With respect to application of the Town's Shoreland Zoning Ordinance § 16D(5) with respect to "visual impact," the matter is remanded for further factual findings and conclusions of law. In all other aspects, the Planning Board's decision is affirmed.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).


DATE: 8/11/2021

Thomas R. McKeon
Justice, Maine Superior Court

8