MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2023 ME 30
Docket:      Yor-22-206
Argued:      January 12, 2023
Decided:     May 23, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

RICHARD TOMINSKY

v.

TOWN OF OGUNQUIT et al.

CONNORS, J.

[¶1]  This is an appeal brought by Richard Tominsky pursuant to M.R. Civ. P. 80B challenging the issuance of building permits by the Town of Ogunquit's code enforcement officer (CEO) to 477 Shore Road LLC.  Because the Town's Board of Appeals erred in concluding that good cause existed for Tominsky's untimely appeal, its decision denying Tominsky's administrative appeal on the merits must be vacated and his appeal to the Superior Court must be dismissed.  In so ruling, we resolve thorny questions regarding the interface among standing requirements, M.R. Civ. P. 80B, and M.R. App. P. 2C(a)(1).

## I.  BACKGROUND

[¶2]  The LLC owns a parcel of property located at 477 Shore Road in Ogunquit.  Between December 2020 and January 2021, the CEO issued six

building permits to the LLC for construction relating to six single-family dwelling units. The permits allowed for renovations and width and height changes to four existing units and the demolition and rebuild of a "barn" into two separate units.

[¶3] Tominsky owns property abutting the LLC's parcel. When the permits were issued, Tominsky was living in Florida; he only learned of the project when he returned to Ogunquit in May 2021. Tominsky's counsel contacted the CEO on May 27, 2021, requesting information about the project but did not receive a response.

[¶4] In June 2021, having not received a response from the CEO, Tominsky filed a complaint in the Superior Court requesting an injunction, a writ of mandamus, and a declaratory judgment against the Town, the CEO, and the LLC. That matter was dismissed in early August 2021 because of Tominsky's failure to exhaust his administrative remedies. On August 8, 2021—roughly seven months after the CEO's issuance of the final building permit and three months after Tominsky learned of the project— Tominsky filed an administrative appeal with the Board requesting that it overturn the CEO's issuance of the permits.

[¶5]    The Board held a hearing on Tominsky's appeal on September 9, 2021, and, as a threshold matter, debated whether it could hear Tominsky's appeal given its untimeliness.  The Ordinance provides that once the CEO has "render[ed] a written decision to a party, any aggrieved party may file an administrative . . . appeal within 30 calendar days of the date of the official, written decision."   Ogunquit, Me., Zoning Ordinance § 225-5.3.A (Apr. 1, 2009).  The Board may "grant exceptions to this 30-day rule" but "only where, in its sole and exclusive judgment, extraordinary circumstances have been shown which would result in a flagrant miscarriage of justice unless the said 30-day time period is extended."  *Id.*  The Board referred to this language as a "good cause" exception.

[¶6]  After debate, the Board unanimously agreed to apply the exception to hear Tominsky's appeal on the merits.[1]  Its decision "was based, in part, on [Tominsky's counsel's] assertion that he received no response from the [CEO] to his May 27, 2021 request for information; and by the delay caused by . . .

---

[1] The LLC filed an appeal pursuant to M.R. Civ. P. 80B challenging the Board's granting of the good cause exception.  The Superior Court (York County, *Mulhern, J.*) denied the appeal, and the LLC then appealed to us.  Simultaneously with this decision, we are vacating the Superior Court's judgment with instructions to dismiss the appeal, *477 Shore Road LLC v. Town of Ogunquit*, Mem-23-61 (May 23, 2023), because, as discussed below, *see infra* ¶¶ 16-20, the LLC lacks standing to challenge the Town's decision in a separate appeal.

Tominsky's case in [the] Superior Court which he asserted he was forced to do because of the Town's lack of response."

[¶7]  In the same hearing, the Board addressed the merits of Tominsky's appeal.  Tominsky raised multiple arguments, focusing primarily on the manner in which the permits were issued and whether the sections in the Ordinance concerning nonconformities were applicable.  The CEO responded to each of Tominsky's arguments.  The LLC was also permitted to address the Board and asserted, inter alia, that the Board could still decline to grant the good cause exception.  Ultimately, the Board voted 4-1 to deny Tominsky's appeal on the merits and issued its written decision shortly thereafter.

[¶8]  Tominsky timely appealed to the Superior Court (*Tominsky I*).  *See* Ogunquit, Me., Zoning Ordinance § 225-5.3.K (Apr. 1, 2009); 30-A M.R.S. § 2691(3)(G) (2023).  His complaint contained multiple counts and named the Town, the Board, the CEO, and the LLC as defendants.  On a motion to dismiss filed by all named defendants, the court (York County, *Mulhern, J.*) dismissed all but one count and treated the remaining count as an appeal pursuant to Rule 80B.  It also dismissed Tominsky's claims against the Board and the CEO and ordered that the LLC remain as a party in interest.

[¶9]   While *Tominsky I* was pending, the CEO issued a certificate of occupancy for one of the dwelling units.  Tominsky appealed the issuance of the certificate to the Board.  At a hearing held in December 2021, the Board had a "lengthy discussion regarding whether it had jurisdiction to hear the appeal, in light of the fact that it recently heard an appeal by the same appellant of the same building permit."  Citing *Salisbury v. Town of Bar Harbor*, 2002 ME 13, ¶ 14, 788 A.2d 598, the Board unanimously voted not to hear the appeal.

[¶10]   Tominsky then filed a second complaint containing multiple counts against the Town and the LLC (*Tominsky II*).  The Town moved to dismiss the complaint pursuant to M.R. Civ. P. 12(b)(6), arguing that the action was an attempt to litigate the underlying building permits in violation of *Salisbury*.  The LLC joined the Town's motion.

[¶11]  In June 2022, the court denied Tominsky's appeal in *Tominsky I* and dismissed his appeal in *Tominsky II*.  Tominsky timely appealed both decisions, and we consolidated the two appeals for our review.

## II.  DISCUSSION

A.    **Although the complaints in *Tominsky I* and *Tominsky II* contain multiple counts, they each assert only an appeal pursuant to Rule 80B**.

[¶12]   The complaints in both actions originally contained multiple

6

counts.[2]   As noted above, the Superior Court granted a motion to dismiss various counts in *Tominsky I* and treated the remaining count as an appeal pursuant to Rule 80B.  In *Tominsky II*, the Superior Court disposed of all four counts in one order.

[¶13]   It is unclear whether in the appeals to us Tominsky seeks to challenge the rejection of his complaints as containing anything but Rule 80B appeals.   In any event, the exclusive avenue to challenge a municipality's adjudicative decision is a Rule 80B appeal unless that avenue is somehow inadequate or a statute provides otherwise.  *See Cayer v. Town of Madawaska*, 2016 ME 143, ¶ 24, 148 A.3d 707; *Fisher v. Dame*, 433 A.2d 366, 372 (Me. 1981). Here, the only relief Tominsky seeks is that obtainable under Rule 80B.   In addition, to the extent that Tominsky claims a violation of his procedural due process rights, the judicial review provided by Rule 80B bestows all the post-deprivation process that is due.  *Cf. Moreau v. Town of Turner*, 661 A.2d 677, 680 (Me. 1995).

---

[2]   Specifically, the complaint in *Tominsky I* contained five counts, captioned "Constitutional Due Process violations" by the CEO, the Board, and the Town; "Violation of Purposes and Policies Underlying Limited Allowance of Nonconformities, and the Existence of Grandfather Clauses"; "Violation of Ordinance Article 3 Provisions on 'Nonconformance'"; "Ordinance Violations Concerning Incomplete Building Permit Applications And Failure to Follow SLR Requirements"; and "Variance."   The complaint in *Tominsky II* contained four counts, captioned "Constitutional Due Process Violations"; "MR Civ P 80B"; "Administrative Procedure, 5 MRS sec. 8001 et. seq."; and "Variance."

**B.      The appeal to the Board in *Tominsky I* was untimely.**

      **1.      If a municipal body grants the good cause exception and hears an untimely administrative appeal and subsequently rejects that appeal on the merits and the objecting party appeals the merits decision pursuant to Rule 80B, the party that has obtained municipal approval need not, and should not, file its own Rule 80B appeal or a cross-appeal pursuant to M.R. App. P. 2C(a) to challenge the application of the exception, but instead may argue in its briefs to the Superior Court and to this Court that the exception should not have been granted.**

[¶14]  The procedural posture of *Tominsky I* presents a question of first impression regarding what steps a party that has obtained municipal approval must take in a Rule 80B appeal of a municipal body's decision on the merits in order to preserve an argument that its opponent's administrative appeal was fatally tardy.  Here, covering nearly all possibilities, the LLC raised the untimeliness argument in its own Rule 80B appeal; as the Rule 80B-appellee in the Superior Court; and again to us as an alternative argument pursuant to M.R. App. P. 2C(a)(1) ("An appellee may, without filing a cross-appeal, argue that alternative grounds support the judgment that is on appeal.").

[¶15]  We conclude that a party that has obtained municipal approval (e.g., the permittee) need not, and should not, file its own Rule 80B appeal to assert that the Board improperly granted a good cause exception.  Rather, when an objecting party appeals a municipal body's ruling on the merits pursuant to

8

Rule 80B, the permittee may raise the good cause issue in its brief. Similarly, if the Superior Court rejects the objecting party's appeal on the merits, the permittee need not file a cross-appeal should its opponent appeal to us. Rather, the permittee may, pursuant to M.R. App. P. 2C(a)(1), 7A(b), raise the good cause issue in its brief. We reason as follows.

[¶16] A party lacks standing to appeal a judgment that grants the relief the party sought simply because the party would prefer to have the judgment rest on different reasoning.[3] Hence, because the LLC prevailed on the merits before the Board, i.e., it obtained a determination that the building permits were valid, the LLC was not aggrieved and lacked standing to file an appeal. *See Witham Fam. Ltd. P'ship v. Town of Bar Harbor*, 2011 ME 104, ¶¶ 7, 15-16, 30 A.3d 811; *Brooks v. Town of N. Berwick*, 1998 ME 146, ¶ 10, 712 A.2d 1050 ("Although [the abutter] might have preferred that the ZBA base its decision on the alternative rationale that the property was no longer grandfathered, he nonetheless received exactly what he asked for from the ZBA: an invalidation of the CEO's decision.").

---

[3] We have noted an exception to this principle that applies "when an essential finding on which the judgment is based might otherwise prejudice the party through the use of collateral estoppel in the future proceeding." *See Witham Fam. Ltd. P'ship v. Town of Bar Harbor*, 2011 ME 104, ¶ 16, 30 A.3d 811 (quotation marks omitted). This exception does not apply here; the LLC does not contend that the Board's finding of good cause might prejudice the LLC in some future proceeding.

[¶17] The requirement that a party must have standing to appeal does not disappear when another party appeals first. A cross-appeal must meet the same justiciability requirements as an initial appeal. *See Nat'l Union Fire Ins. Co. v. West Lake Acad.,* 548 F.3d 8, 23 (1st Cir. 2008) ("A cross appeal is generally not proper to challenge a subsidiary finding or conclusion when the ultimate judgment is favorable to the party cross-appealing."); *Matter of Sims*, 994 F.2d 210, 214 (5th Cir. 1993) ("A cross-appeal filed for the sole purpose of advancing additional arguments in support of a judgment is 'worse than unnecessary', because it disrupts the briefing schedule, increases the number (and usually the length) of briefs, and tends to confuse the issues. Such arguments should, instead, be included in the appellee's answering brief." (citation omitted)).

[¶18] This case is further complicated by the fact that whether a cross-appeal is necessary is normally determined by whether the argument that the cross-appellant seeks to advance would result in different relief than that granted by the judgment. *See* M.R. App. P. 2C(a) Advisory Committee Note—July 2022. A timeliness argument differs from the argument that the merits were incorrectly decided in terms of applicable relief. *See id.* A ruling on the merits is a judgment on the merits, whereas a ruling that an appeal is untimely results in a dismissal, i.e., a "change to the judgment." *Id.*

[¶19]  But Rule 80B includes no provision for cross-appeals.  Indeed, it also does not specifically permit a motion to dismiss.  Rule 80B is designed "to afford prompt, effective, expeditious and direct judicial review of administrative action."  *Colby v. York Cnty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982).  It would promote form over substance, undermine the goal of expedition of administrative appeals, and lead to "worse than unnecessary" procedural complications to require a permittee to appeal municipal approval under Rule 80B if an opponent files a separate Rule 80B appeal simply because the permittee seeks to preserve its ability to advance an argument that would result in a dismissal of its opponent's appeal instead of a judgment affirming the municipal decision.  *See Matter of Sims*, 994 F.2d at 214 (quotation marks omitted).  Moreover, the rules of civil and appellate procedure are to be construed to secure "the just, speedy[,] and inexpensive determination of every" action and appeal.  M.R. Civ. P. 1; M.R. App. P. 1.

[¶20]  For these reasons, the LLC did not need to file a separate Rule 80B appeal.[4] Nor did it need to file a cross-appeal to Tominsky's appeal.  Raising the good cause issue as an alternative argument pursuant to M.R. App. P. 2C(a)(1) was appropriate in this context.

---

[4] Thus, as noted above, *supra* n.1, the matter is dismissed.  *477 Shore Road v. Town of Ogunquit*, Mem-23-61 (May 23, 2023).

**2.    The meaning of the Ordinance's good cause exception is determined by the court de novo.**

[¶21]  There are two types of "good cause" exceptions to the deadline for filing an appeal to a municipal body.  First, there is a judicially crafted exception: a deadline contained an ordinance or established by statute may be extended "when a court 'finds special circumstances which would result in a flagrant miscarriage of justice.'"  *Viles v. Town of Embden*, 2006 ME 107, ¶ 8, 905 A.2d 298 (quoting *Keating v. Zoning Bd. of Appeals*, 325 A.2d 521, 524 (Me. 1974)).  With respect to this judicially crafted exception, on appeal to us, we review the Superior Court's application and apply an abuse of discretion standard to the court's determination of the existence of good cause and a clearly erroneous standard to the court's factual findings.  *See id.* ¶ 9.

[¶22]  Second, as is the case here, a deadline may be extended pursuant to an applicable ordinance when a municipal entity finds good cause to hear an appeal that would otherwise be deemed late under the ordinance.  In this context, the Superior Court acts in an intermediate appellate capacity, and we review directly the operative decision of the municipality.  *See Tomasino v. Town of Casco*, 2020 ME 96, ¶ 5, 237 A.3d 175.  As to the standard of review, language in *Otis v. Town of Sebago*, 645 A.2d 3, 5 (Me. 1994) suggests that we give deference to a board's determination whether the good cause exception

has been met. More precisely, our standard of review for municipal adjudicative decisions is to give great deference to a board's findings of fact, i.e., to sustain the findings unless the evidence compels a contrary conclusion, *see Tomasino*, 2020 ME 96, ¶ 5, 237 A.3d 175, and to give no deference to a board's interpretation of an ordinance because such interpretation is a question of law that we review de novo, *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 7, 946 A.2d 408; *Gensheimer v. Town of Phippsburg*, 2007 ME 85, ¶ 8, 926 A.2d 1168; *Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285. As to mixed questions of law and fact, we afford a board's ultimate characterization "substantial deference." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶¶ 8-9, 828 A.2d 768. The test for affording substantial deference is whether the issue involves a situation in which the legal determination is "greatly informed" by the board's factual findings. *See Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 13, 942 A.2d 1202.

[¶23] Applying these principles here, we defer to the Board's fact finding regarding why the appeal was filed more than thirty days after the CEO's issuance of the permits. But whether those facts present "extraordinary circumstances . . . which would result in a flagrant miscarriage of justice unless the said 30-day time period is extended" is a question of law that we review

de novo. *See* Zoning Ordinance § 225-5.3.A. Indeed, because the language used in the Ordinance to define when the good cause exception should apply mirrors the test we crafted in *Keating*, the meaning of the test is squarely a legal one for our resolution.[5]

> **3.**  **Tominsky did not qualify for the Ordinance's good cause exception because a mistaken belief of law is not an "extraordinary circumstance" that would result in a "flagrant miscarriage of justice."**

[¶24]  When interpreting a zoning ordinance, "we first evaluate the plain meaning of the Ordinance and, if the meaning is clear, we need not look beyond the words themselves. We construe the terms of an ordinance reasonably, considering its purposes and structure and to avoid absurd or illogical results." *Olson v. Town of Yarmouth*, 2018 ME 27, ¶ 11, 179 A.3d 920 (alterations and quotation marks omitted). Here, we conclude that, given the purpose of the Ordinance provision and the choice of words mirroring our language in *Keating*, the Ordinance's good cause exception is intended to adopt the test we announced in *Keating*. It follows that our decisions interpreting the contours of the judicial test can be applied to the analogous Ordinance exception.

---

[5]  It is clear from the language in the Ordinance providing that the Board may grant the exception only when it concludes "in its sole and exclusive judgment" that the test has been met that the Ordinance intends to give a wide berth to the Board when assessing whether to grant the exception. That said, it is the courts' job to interpret the language of the Ordinance in order to conclude whether the facts as found by the Board establish a predicate to apply that test.

14

[¶25] "The need for a good cause exception primarily stems from the lack of notice of the issuance of the building permit to abutting landowners or other persons who may be aggrieved by its issuance." *Viles*, 2006 ME 107, ¶ 12, 905 A.2d 298. "Therefore, when [a fact finder] examines whether the good cause exception is applicable to a situation, it starts with determining whether the appellant received notice of the issuance of the permit." *Id.* ¶ 13. Importantly, "lack of notice is a key factor, but it is not a determinative factor. Another factor is the amount of time the appellant waited to file the appeal after obtaining actual knowledge of the permit." *Id.* (citation omitted). Other factors may be relevant because "all the equities of the situation" should be considered in deciding whether to grant the exception. *Id.* ¶¶ 11, 13 (quotation marks omitted).

[¶26] The first question is whether Tominsky lacked notice. *See id.* ¶ 13. The building permits were issued between December 2020 and January 2021, but the Board found that Tominsky did not learn of the project until he returned to Ogunquit in May 2021 because he was living in Florida. Thus, Tominsky's failure to appeal between January and May based on lack of notice could trigger application of the exception.

[¶27]  After allowing for Tominsky's inaction owing to a lack of notice, there is no viable excuse for the eighty-one day delay that followed.  The record reflects that Tominsky had actual knowledge of the project as early as May 19, 2021, yet he did not file his appeal with the Board until August 8.  One of his stated reasons—that he did not receive a response to his counsel's May 27 letter to the CEO—is untethered to the lack of notice that can form a predicate to the application of the good cause exception.  Indeed, regarding the CEO's lack of response, the letter sent to the CEO by Tominsky's counsel on May 27 states, "It seems to me that such a massive proposal should at least have gone to the ZBA . . . ."  Although a municipal officer's failure to respond to a citizen inquiry is concerning, the CEO's lack of response did not prevent Tominsky from filing an administrative appeal with the Board.  There is no prerequisite in the Ordinance that an appellant must speak with the CEO before filing an appeal.

[¶28]  Even if the CEO's lack of a response could support a short delay after May 27, Tominsky did not file his appeal until August 8.  *See Wilgram v. Sedgwick*, 592 A.2d 487, 488 (Me. 1991) (determining that the good cause exception could not save an abutter's untimely appeal that was filed seven months after the issuance of the building permit and seventy-six days after the

abutter obtained actual notice of the project). The reason for Tominsky's further delay cited by the Board was Tominsky's decision to file a complaint in the Superior Court and waiting until that case was dismissed before appealing to the Board. But delay based on ignorance of the law cannot establish an extraordinary circumstance that would result in a flagrant miscarriage of justice. *Cf. Alley v. Alley*, 2004 ME 8, ¶¶ 1-2, 840 A.2d 107 (affirming the denial of relief under M.R. Civ. P. 60(b) because "[a]n attorney's mistaken belief as to the law does not rise to the level of excusable neglect" (quotation marks omitted)); *Young v. Sturdy Furniture Co.*, 441 A.2d 320, 321-22 (Me. 1982) (compiling cases and discussing whether mistake of law can satisfy the "strict" standard of excusable neglect).

[¶29] As we noted in *Young*, in determining whether excusable neglect exists, the standard is "strict," and extensions of time "should be limited to extraordinary cases." 441 A.2d at 321. The text of the Ordinance referencing the need for "extraordinary circumstances" underscores that the Ordinance exception does not excuse delay based on mistaken belief of the law.

[¶30] Nor was this even a mistaken belief as to a difficult issue of law. We have long required parties to exhaust their administrative remedies before turning to the courts for relief. *See, e.g.*, *Bryant v. Town of Camden,* 2016 ME 27,

¶¶ 10, 12, 132 A.3d 1183; *Town of Levant v. Seymour*, 2004 ME 115, ¶ 13, 855 A.2d 1159; *Ne. Occupational Exch., Inc. v. Bureau of Rehab.*, 473 A.2d 406, 408-09 (Me. 1984); *Cushing v. Smith*, 457 A.2d 816, 821 (Me. 1983); *Levesque v. Town of Eliot*, 448 A.2d 876, 878 (Me. 1982).

[¶31]  In sum, the Board misapprehended the scope of the good cause exception, and the exception does not apply to the factual predicate reflected in the Board's findings as to the cause of Tominsky's delay in appealing.[6]

---

[6]  Even if the appeal had been timely and we could have reviewed the Board's merits determination, the Board's decision would have been affirmed.

Tominsky's arguments can be divided into two categories: challenges to the application of the Ordinance's substantive provisions and procedural challenges.  Beginning with the relevant Ordinance provisions, we note that Tominsky argues that the Ordinance bars six dwelling units on 477 Shore Road.  But if there were six units there prior to the enactment of the Ordinance, then the units are not only grandfathered but can also be "repaired, maintained, improved, enlarged, changed or relocated" in conformity with all other dimensional requirements besides lot area or street frontage.  Ogunquit, Me., Zoning Ordinance § 225-3.4.C (Apr. 1, 2009).  Although Tominsky argues that there was insufficient evidence in the record to support the finding that six units pre-existed the Ordinance, according to the Board's meeting minutes, he conceded that six units pre-existed the Ordinance.  Additionally, although the record shows that the LLC's alterations to the units were substantial, given that the issue whether the construction met Ordinance standards is a fact-intensive question, the Board's determination that the changes were permissible was reasonable.  *See id.*; *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048.  Finally, to the extent that Tominsky claims that the project violated shoreland zoning requirements, the Board did find, and could reasonably find on the evidence before it , that no construction occurred "within" that zone as required for the shoreland zone provisions to apply.  *See* Ogunquit, Me., Zoning Ordinance § 225-4.5.E (Apr. 1, 2009).

Turning to his procedural arguments, we conclude that Tominsky misconstrues the applicable burden of proof.  He argues that the project proponents were required to prove that the proposal complied with the Ordinance.  Although a project proponent "shall have the burden of proving that the proposed land use activity is in conformity with the purposes and provisions of th[e] Ordinance," *id.* § 225-4.5.D, that burden applies at the permitting stage.  On appeal to the Board, "[t]he person filing the appeal shall have the burden of proof."  Ogunquit, Me., Zoning Ordinance § 225-5.3.F (Apr. 1, 2009).  Hence, it was Tominsky's burden to prove why the project did not meet the requirements of the Ordinance.  To the extent that he is complaining that he did not understand how the CEO could have issued the permits prior to the hearing before the Board, the CEO's decision was subject to de novo review before the Board, Ogunquit, Me., Zoning Ordinance § 225-5.2.A

18

**C.** **The appeal in *Tominsky II* fails because the issuance of a certificate of occupancy is not an appealable event except to challenge whether the certificate holder adhered to the terms of the permit.**

[¶32]   Finally, Tominsky challenges the dismissal of his appeal in *Tominsky II*.   But *Salisbury*, 2002 ME 13, 788 A.2d 598, is directly on point. There, we stated:

> An appeal of a certificate of occupancy may not, however, substitute for an appeal of the underlying permit.  If the permittee has complied with the terms of a valid permit, an abutter may not challenge the issuance of the certificate of occupancy based on a defect in the permit.  If, however, the permittee has meaningfully exceeded the authority contained in the permit, or otherwise violated conditions of the permit, the issuance of the certificate of occupancy may be challenged.

*Id.* ¶ 14 (citation omitted).

[¶33]  Tominsky does not allege that the LLC failed to comply with the permits; rather, he seeks to reassert arguments raised in *Tominsky I* that the permits should not have been issued.  Thus, *Tominsky II* falls well within the type of challenge prohibited by *Salisbury*, and the court did not err in dismissing his action for failure to state a claim.

---

(Apr. 1, 2009), and the CEO explained during the hearing how the permits met the Ordinance's requirements.  Moreover, Tominsky does not explain how he suffered any specific prejudice from not having heard the CEO's explanation prior to the hearing.  *Cf. Fitanides v. City of Saco*, 2015 ME 32, ¶ 22, 113 A.3d 1088.

To the extent that Tominsky seeks to raise any other basis to challenge the permits, his arguments are not adequately developed and are therefore deemed waived.  *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290.

### III. CONCLUSION

[¶34] For the reasons given above, the appeal in *Tominsky I* before the Board was untimely, and the appeal in *Tominsky II* failed to allege a viable claim for relief.

The entry is:

> The judgment in *Tominsky I*, AP-21-023, is vacated. The matter is remanded to the Superior Court for entry of a judgment vacating the Board's decision and remanding the matter to the Board with instructions to the Board to dismiss the matter for want of jurisdiction. The judgment in *Tominsky II*, AP-22-002, is affirmed.

---

William A. Hahn, Esq. (orally), Hahn & Matkov, Boston, for appellant Richard Tominsky

Mary E. Costigan, Esq., and Zachary B. Brandwein, Esq. (orally), Bernstein Shur, Portland, for appellee Town of Ogunquit

Matthew J. Williams, Esq. (orally), Hodson & Ayer, Kennebunk, for appellee 477 Shore Road LLC

York County Superior Court docket numbers AP-2021-023 & AP-2022-002
FOR CLERK REFERENCE ONLY