Edward W. **CARDINALI**

v.

**TOWN OF BERWICK, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 13, 1988.
Decided Dec. 2, 1988.

E. Stephen Murray, John C. Bannon (orally), Murray, Plumb & Murray, Portland, for plaintiff.

Patrick J. Scully (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendants.

Before WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

█ Planning boards and other agencies have the inherent power to reconsider actions previously taken. *Jackson v. Town of Kennebunk*, 530 A.2d 717 (Me.1987). If they adopt rules of procedure expressly permitting parties to seek reconsideration, the timely filing of such a petition tolls the running of a limitations period on the underlying decision. *Mechanic Falls Water Co. v. PUC*, 381 A.2d 1080, 1085–90 (Me. 1977). But in the absence of officially adopted reconsideration procedures, is a planning board's decision final at the close of the meeting where it is made, or not until the next scheduled meeting when, by conventional rules of parliamentary procedure, a motion to reconsider can still be presented? We hold that a party's effort to use general parliamentary devices to reopen a decision does not toll the running of a limitations period; to achieve that result, there must be an officially adopted process for reconsideration.

## FACTS

Apart from a short-lived experiment in 1980, the Town of Berwick had no Town-wide zoning until the spring of 1986. Voters finally adopted a zoning ordinance at the March 8, 1986, Town meeting. During the preceding period the plaintiff, Edward W. Cardinali, had been planning a subdivision on a 140–acre tract he was negotiating to buy astride the line between Berwick and Lebanon. By February 16, 1986, Cardinali's surveyor/planner, Paul Durgin, had drawn up a sketch map with preliminary proposals for site improvements and lot lines, but the deadline had passed for getting on the February 21, 1986, agenda of the Planning Board. Scheduled to appear at that meeting on behalf of other clients, Durgin talked to Planning Board chair Richard Stillings shortly before the meeting and arranged to make an unscheduled presentation on Cardinali's behalf. When Durgin presented the Cardinali plan, questions arose on several issues. Later, on March 6, 1986 (two days before the Town meeting that adopted zoning), the Board formally placed the Cardinali proposal on its agenda for March 20, 1986.

On March 20, 1986, the Board decided that the Cardinali subdivision did not meet the requirements of the new zoning ordinance. The Board then began the process of considering whether it, and a few other existing subdivision proposals, were exempt as already pending applications. On May 15, 1986, after extensive consultation with Cardinali, his lawyer, and a lawyer for the Southern Maine Regional Planning Commission, the Board voted unanimously that the Cardinali proposal was not grandfathered. At the next meeting on June 5, 1986, Cardinali tried to persuade the Board to reconsider its action, but was unsuccessful. He then filed a two-count complaint in the Superior Court on July 7, 1986, seeking a declaratory judgment that his subdivision was grandfathered and damages under 42 U.S.C. § 1983 for the violation of his civil

rights. Cardinali moved for summary judgment on his grandfathering count, and the Town[1] moved for summary judgment on both counts. The Superior Court (York County; Fritzsche, J.) granted summary judgment to the Town, holding that the subdivision was subject to the new ordinance. Both sides appealed.

## RIPENESS

■ A threshold question is whether the Board took any appealable action. Standing alone, the Board's May 15 ruling that the new ordinance governs Cardinali's application would be a classic instance of an interlocutory order not subject to "piecemeal appellate review." *Mechanic Falls Water Co. v. PUC*, 381 A.2d 1080, 1088 (Me.1977). In this case, however, the Board's ruling that Cardinali was not grandfathered must be considered together with its March 20 ruling that "the Board reviewed the requirements of the [new ordinance] and the proposal does not meet them." Thus, although the approval process did not proceed very far, the combined decisions constituted final adverse action on the substance of Cardinali's proposal. We have previously entertained appeals of an early, but flat, denial of an application under Rule 80B. *E.g., Maine Isle Corp. v. Town of St. George*, 499 A.2d 149 (Me. 1985).

## LIMITATIONS

■ The parties agree that if the Board's final action occurred on May 15, 1986, Cardinali's complaint was untimely, whereas if final action did not occur until June 5, it was timely.[2] Cardinali argues that because of his continuing negotiations with the Board after its May 15 decision, its refusal to reconsider the decision at its June 5, 1986, meeting was the Board's final action.

---

1. Although Count II alleges that the Berwick Planning Board members conspired in their individual capacities, we shall refer to the defendants collectively as the Town because the zoning dispute is the primary controversy.

2. The parties have proceeded on the assumption that M.R.Civ.P 80B provides the governing limitations period even though this is a declaratory judgment action.

The record reveals no rehearing procedures either in the Berwick ordinance or officially adopted by the Board apart from the ordinance. The only basis for Cardinali's argument that such a procedure existed is the following deposition testimony of the Planning Board chair:

> ... Mr. Cardinali had been in contact with me several times and wanted to see if there was some way that we could get the board to reconsider its action whereby it had determined that he did not have vested rights. And one of his concerns at that particular time I remember was he was beginning to run out of time. And it's 30 days in order to make an appeal.
>
> And I suggested to him—in fact, I think we were in the office upstairs in the town hall—that he would be welcome to come and try to convince the board that it should reconsider its action. But I couldn't guarantee what the board would do and, if the board reconsidered its action, that an appropriate parliamentary device would be for a member to make the motion, someone to second it and then table the motion until the next meeting which would give him more maneuver time to pursue his suit in the event that the board still went the same way. And he agreed to that. We—I put him on the agenda for the 5th. And he made a proposal to the board, and there was no motion to reconsider. So I guess we'd say that the matter never was officially before the—since there was no motion made to reconsider then the May 15th date stands as the date of denial.
>
> \* \* \* \* \* \*
>
> The parliamentary posture was that the item had been—it had been determined that it was not—did not have vested rights at the previous meeting. And so it would still have been appropriate for the board to reconsider its vote at the very next meeting which was the June meeting. So we suggested that—I suggested that if Mr. Cardinali was willing to come in and if he could convince the board that—
>
> Q. Do you recall asking if there was a motion at that meeting on June 5 or 6?
>
> A. Yes. In fact, I used—the words I used was, the chair awaits a motion. I outlined the parliamentary procedure involved.
>
> Q. And there was no motion?
>
> A. And there was no motion and said, let the record show that there was no motion.

This testimony does not reveal rehearing procedures of the sort we discussed in *Mechanic Falls Water Co.*, but only the Board chair's recognition of the conventional parliamentary principle that a board is free to reconsider an action it took on the next preceding day of business. *See* Robert's Rules of Order § 36 at 266 (S. Robert ed. 1970). We permitted a petition for reconsideration to toll the limitations period and eliminate the finality of the underlying decision in *Mechanic Falls Water Co.* because the PUC had explicitly invited such petitions in its Rules of Practice and Procedure. We were unwilling to review an order that, because of the petition's filing, was still officially subject to amendment or rehearing. 381 A.2d at 1088. We have no similar concern over efforts to activate a mere parliamentary procedure. Indeed, our recognition of this parliamentary maneuver as sufficient to toll the running of the limitations period would permit an applicant to reopen a lapsed limitations period merely by bringing a motion to reconsider at any later time and having an unsuspecting board vote not to reconsider.

 Even were we to elevate the significance of the Board chair's testimony and treat it as evidence of an informal practice on the Board's part,[3] developers, their lawyers, citizens, and town boards would be badly served by a holding that such informal practices can affect the finality of a decision. On that basis, parties who were

---

**3.** The Superior Court found that the parliamentary device was "apparently" an accepted procedure and that in its failure to act the Board "in essence" voted to deny Cardinali's petition for reconsideration.

not intimately familiar with a particular Board's unwritten history and traditions would act at their peril in attempting to determine whether a particular decision was final and subject to appeal. We prefer to rest on a principle permitting a decision's status to be determined by examination of the record: we therefore hold that only petitions for rehearing filed under procedures officially adopted by an agency can be relied upon to toll a limitations period. As a result, Cardinali's complaint in this action was untimely.

 \* \* \* \* \* \*

Because we conclude that the complaint was untimely, the declaratory judgment count must be dismissed; we therefore do not reach the substantive issue whether Cardinali's subdivision was grandfathered. Since we sustain the Town's cross appeal, we deny the sanctions sought by Cardinali.

Cardinali has neither briefed nor argued the proposition that his section 1983 count should survive the dismissal of the state law declaratory judgment. We are aware of the United States Supreme Court's disapproval of "truncated" limitations periods for section 1983 actions, *see Felder v. Casey*, — U.S. —, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988). But we are also aware of the line of First Circuit precedents holding that section 1983 is not to be used to create a federal zoning law. *See Burr v. Town of Rangeley*, 549 A.2d 733, 735 (Me. 1988), *citing Chongris v. Board of Appeals*, 811 F.2d 36, 42 (1st Cir.1987); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Since Cardinali has not raised the issue, we consider any argument for separate treatment of the section 1983 count to be waived.

The entry is:

Declaratory Judgment on Counts I and II is vacated; remanded to the Superior Court with instruction to dismiss the action for lack of timely filing.

All concurring.