MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 68
Docket:        Ken-23-87
Argued:        October 4, 2023
Decided:       August 20, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

GEOFFREY S. STIFF et al.

v.

TOWN OF BELGRADE et al.

CONNORS, J.

[¶1]  Geoffrey S. Stiff and Carolyn B. Stiff appeal from a judgment of the Superior Court (Kennebec County, *Stokes, J.*) denying their appeal from the Town of Belgrade Planning Board's grant of an after-the-fact shoreland zoning permit for a structure on the property of their abutting neighbors, Stephen C. Jones and Jody C. Jones.  *See* M.R. Civ. P. 80B(a), (n).  Because the Planning Board misconstrued the Belgrade Shoreland Zoning Ordinance (SZO) in concluding that the structure was "accessory" to the existing house on the Joneses' lot, we vacate the judgment.

---

\* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]　The following facts are drawn from the administrative and procedural records. *See Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 11, 252 A.3d 504.

[¶3]　The Stiffs own a lot on Long Pond in Belgrade.　The Joneses own the neighboring property, a 1.23-acre legally non-conforming lot located within the limited residential district of the Belgrade shoreland zone.[1]

[¶4]　The SZO allows for only one residential dwelling unit on the Joneses' lot.　*See* Belgrade, Me., Shoreland Zoning Ordinance § 15(A)(1)(a) (Nov. 6, 2018).[2]　Before the Joneses constructed the structure at issue in this appeal, the Joneses' lot contained a 1981 square foot three bedroom house and a shed.　That pre-existing house is a non-conforming structure and cannot be expanded because it is located entirely within the minimum setback from the normal high-water line of Long Pond.　*See id.* §§ 12(C)(1)(c)(i), 15(B)(1).

---

[1]　The lot is non-conforming because it does not meet the minimum lot width or shore frontage requirements under the SZO.　*See* Belgrade, Me., Shoreland Zoning Ordinance § 15(A)(1)(a), (4) (Nov. 6, 2018).

[2]　A "[r]esidential dwelling unit" is defined in the SZO as a "room or group of rooms designed and equipped for use as permanent, seasonal, or temporary living quarters for only one family at a time and containing cooking, sleeping, and toilet facilities.　The term shall include mobile homes and rental units that contain cooking, sleeping and toilet facilities regardless of the time-period rented. Recreational vehicles are not residential dwelling units." *Id.* § 17.

[¶5]  In 2017, the Joneses sought a permit to build what was described in their application as a twenty-six by twenty-six-foot "garage" with a "laundry room" and a "playroom."  The Code Enforcement Officer (CEO) issued a permit to build the structure as described in the application, although he had no authority to do so.  *See id.* § 14(Table 1)(16)(A).

[¶6]  Subsequently, while the Stiffs were away, instead of building the structure approved in the CEO-issued permit, the Joneses built a two-story, 36.2-foot by 28.4-foot structure with three bedrooms, two bathrooms, a laundry room, and a room that was labeled "playroom" on a building sketch. The "playroom" included a sink and kitchen appliances.  A paved walkway was built between the pre-existing house and the new structure, consistent with the Joneses' objective of having the new structure "serve as an addition to [their] single family dwelling."

[¶7]  The Stiffs objected.  Eventually, the Joneses applied to the Planning Board for an after-the-fact as-built permit for the new structure.  The Joneses' application described the new structure as containing "square footage" of 1028 feet.

[¶8]  The Planning Board approved the permit with the condition that the "[i]nstallation of kitchen appliances and the preparation of meals is prohibited

in the proposed structure." The Stiffs appealed to the Board of Appeals (BOA), which remanded the matter because the Planning Board's approval lacked findings of fact or conclusions of law. On remand, the Planning Board again approved the Joneses' permit, finding as a fact that the new structure was a "1028-square foot structure"; repeating its previous "kitchen appliance" prohibition condition, which required appliances to be removed;[3] and concluding as a matter of law that the new structure was a "permitted accessory structure to a residential use under section 14, Table 1" of the SZO.[4]

[¶9] The Stiffs again appealed to the BOA, then filed a complaint in the Superior Court after the BOA denied their appeal. *See* M.R. Civ. P. 80B(a). The Superior Court also denied the appeal and the Stiffs timely appealed to us. *See* M.R. Civ. P 80B(n); M.R. App. P. 2B(c)(1).[5]

---

[3] The CEO has construed the "kitchen appliance" condition to require the removal of only "cooking" appliances because in his view, refrigerators can be located in a garage.

[4] Table 1 of section 14 of the SZO recites as allowed in the Limited Residential District with Planning Board approval on a non-conforming lot "[s]tructures accessory to allowed uses." *Id.* § 14(Table 1)(16)(A).

[5] The Stiffs also filed a separate suit alleging that the new structure violates a setback restriction in the parties' deeds. The Joneses filed an answer and counterclaimed for trespass, nuisance, and a declaration of a boundary line. *Stiff v. Jones*, 2022 ME 9, ¶¶ 6-7, 268 A.3d 294. The court granted the Joneses' motion for partial summary judgment on Count 1 of the Stiffs' complaint because the Stiffs did not demonstrate that a "vast majority" of deeds in a 1963 plan constituted a common scheme of development. *Id.* ¶ 7. On April 8, 2021, the Stiffs filed a motion requesting that the court amend its order by certifying it as a final judgment, and they timely appealed after the Superior Court issued an order granting their motion. *Id.* We dismissed the appeal because the partial summary judgment entered in favor of the Joneses could not produce a full and final resolution of Count 1 of the Stiffs' complaint. *Id.* ¶ 10. On remand, the court found that the Joneses' structure violates a 15-foot setback

## II.  DISCUSSION

### A.  Our standard of review: the deference we give to components of a local board's decision varies.

[¶10]  Because the BOA acted in an appellate capacity and the Superior Court in an intermediate appellate capacity, we review directly the decision of the Planning Board.  *Tomasino v. Town of Casco*, 2020 ME 96, ¶ 5, 237 A.3d 175; *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773.

#### 1.  We review a local board's findings of fact with deference.

[¶11]  We defer to a local board's findings of fact unless they are clearly erroneous.  *Tominsky v. Town of Ogunquit*, 2023 ME 30, ¶ 21, 294 A.3d 142.  A factual finding is clearly erroneous when "no competent evidence in the record . . . support[s] the finding; the finding is based on a clear misapprehension of the meaning of the evidence; or the force and effect of the evidence, taken as a whole, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case."  *H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me. 1996) (quotation marks omitted).

---

restriction but has given "the parties the opportunity to present argument and/or evidence as to the appropriate remedy," and that action remains pending in Superior Court.  *Stiff v. Jones*, No. RE-2019-57, at 9-10 (Me. Super. Ct. Sep. 2, 2022).  *See Cabral v. L'Heureux*, 2017 ME 50, ¶ 10, 157 A.3d 795 ("[We] may take judicial notice of pleadings, dockets, and other court records where the existence or content of such records is germane to an issue in the same or separate proceedings.")

### 2. We review a local board's interpretation of an ordinance de novo with no deference to the board's interpretation.

[¶12]  The interpretation of an ordinance is a question of law that we review de novo, with no deference to the local board's interpretation. *Tominsky*, 2023 ME 30, ¶ 22, 294 A.3d 142; *Portland Reg'l Chamber of Com. v. City of Portland*, 2021 ME 34, ¶ 23, 253 A.3d 586.  We construe the terms of an ordinance "reasonably, considering its purposes and structure and to avoid absurd or illogical results," *Olson v. Town of Yarmouth*, 2018 ME 27, ¶ 11, 179 A.3d 920 (quotation marks omitted), and we give any undefined terms in an ordinance "their common and generally accepted meaning unless the context clearly indicates otherwise."  *Lakeside at Pleasant Mountain Condo. Ass'n v. Town of Bridgton*, 2009 ME 64, ¶ 12, 974 A.2d 893.  As with construing statutes, our task is to "discern the intent of the legislative bodies that enact them." *Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 18, 772 A.2d 256.

### 3. We defer to a local board's characterization of a use if it is greatly informed by the board's factual findings.

[¶13]  In *Jordan v. City of Ellsworth*, we stated:

The characterization of structures in applications for conditional use permits is a mixed question of law and fact.  When there is no ambiguity in the language of the ordinance, we ordinarily review a Board's characterization of a structure as a finding of fact, giving deference to the Board's ultimate conclusion.  *Goldman v. Town of Lovell,* 592 A.2d 165, 168 (Me. 1991) ("[W]hether or not the

proposed structure or use meets the definition in the application thereof may be a matter of fact for initial Board determination."). This factual determination will only be overturned if it is not adequately supported by evidence in the record.

Interpretations of municipal ordinances, however, are questions of law subject to *de novo* review. The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole. Thus, we review the interpretation of the ordinance *de novo,* but we afford the Board's ultimate characterization of the structure substantial deference.

2003 ME 82, ¶¶ 8-9, 828 A.2d 768 (citations and quotation marks omitted).

[¶14]  After our decision in *Jordan*, we further explained that deference to a board's characterization of use is warranted when the characterization decision is "greatly informed" by a factual determination. *Tominsky*, 2023 ME 30, ¶ 22, 294 A.3d 142 (citing *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 13, 942 A.2d 1202); *see also Fryeburg Tr. v. Town of Fryeburg*, 2016 ME 174, ¶ 12, 151 A.3d 933.  In short, we defer when the characterization determination is primarily fact dependent, while we do not defer when resolution of the question revolves primarily around the interpretation of language in the ordinance.[6]

---

[6] Thus, in *Lane*, we deferred when the question was whether the activity of rock crushing fell into the broader use of quarrying. *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 13, 942 A.2d 1202.  Conversely, when the question was whether a large array of solar panels was a "public utility facility" within the meaning of the ordinance, we answered that question de novo with no deference, reasoning that "the dispute focuses on the meaning of the text of the Ordinance, as opposed to

8

## B. The second structure is not an accessory structure as defined in the SZO.

[¶15] The SZO defines "[a]ccessory structure or use" as

> a use or structure which is incidental and subordinate to the principal use or structure. Accessory uses, when aggregated shall not subordinate the principal use of the lot. A deck or similar extension of the principal structure or a garage attached to the principal structure by a roof or a common wall is considered part of the principal structure.

Belgrade, Me., Shoreland Zoning Ordinance § 17.

[¶16] The SZO does not define "incidental" or "subordinate." Hence, as noted, *see supra* ¶ 12, we construe these terms in accordance with their common and generally accepted meanings. The common understanding of these two terms is having a minor or secondary role.[7]

---

whether the bundle of factual characteristics of the project fit an unambiguous ordinance definition." *Odiorne Lane Solar, LLC v. Town of Eliot*, 2023 ME 67, ¶ 5, 304 A.3d 253; *see also Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶¶ 2-3, 836 A.2d 1285 (concluding that whether a business constituted "warehousing" as defined by the ordinance was reviewed de novo because the "parties do not dispute the nature or physical description of the proposed self-storage facility; rather, their dispute centers on an interpretation of the ordinance—a question of law").

[7] "[I]ncidental" means "[s]ubordinate to something of greater importance; having a minor role." *Incidental*, Black's Law Dictionary (12th ed. 2024); *see also Incidental*, Webster's New World College Dictionary (5th ed. 2016) ("[S]econdary or minor, but usually associated."). "[S]ubordinate" means "[p]laced in or belonging to a lower rank, class, or position." *Subordinate*, Black's Law Dictionary; *see also Subordinate*, Webster's New World College Dictionary ("[S]econdary.").

[¶17]  As a structure,[8] the new building here replicates the pre-existing house.  They are similar in size.[9]  Both include three bedrooms, two bathrooms, a common living space, a room with a sink in which appliances were or are easily located, and a covered outdoor space.

[¶18]  The terms "accessory use" and "accessory structure" are not interchangeable.  *See Four Seasons Mgmt. Servs., Inc. v. Town of Wrightsville Beach*, 695 S.E.2d 456, 464 (N.C. Ct. App. 2010).  Both structures here, *as built*, are houses, with neither secondary nor minor to the other.  *See Davidson v. D.C. Bd. of Zoning Adjustment*, 617 A.2d 977, 982 (D.C. 1992) (reading a district regulation to say that a building is not an accessory building "where given its size, design and declared purposes, it can reasonably be expected to duplicate the functions of the main building rather than in fact serving as incidental to those uses").

---

[8]  The SZO defines a "[s]tructure" in relevant part as "anything temporarily or permanently located, built, constructed or erected for the support, shelter or enclosure of persons, animals, goods or property of any kind or anything constructed or erected on or in the ground.  The term includes structures temporarily or permanently located, such as decks, patios, and satellite dishes . . . . [But it] does not include fences."  Belgrade, Me., Shoreland Zoning Ordinance § 17.

[9]  Contrary to the Planning Board's finding of fact, the record reflects that the new structure as built is 1835, not 1028, square feet in size.  Although the footprint is 1028 square feet, the structure has a second story.  This size is comparable to the size of the pre-existing house (1981 square feet plus a small loft).

10

[¶19]  The question presented here is whether a structure not built or designed as accessory can be transformed into an accessory structure if one activity (cooking) normally occurring in the (residential) use of the principal structure is prohibited in the second structure.  The answer to this legal question is no.[10]

[¶20]   First, consistent with the ordinary meaning of the terms "incidental" and "subordinate," prohibiting within a second structure a single component of the use of the first structure does not render the second structure

---

[10]  We treat this question as a legal one and do not accord the Planning Board's determination deference because its findings of fact do not greatly inform the answer.  *See supra* ¶ 14.  The only finding of fact by the Planning Board arguably relevant to answering this question is the identification of the size of the new structure because the relative sizes of two structures can be one factor in determining whether one of the structures is incidental and subordinate to the other.  *See* Norman Williams, Jr. & John M. Taylor, 4 American Land Planning Law § 79:14 (Rev. Ed. 2021) ("Obviously the relative size of the principal and the alleged accessory use is a major criterion here."); *Tennyson v. Zoning Hearing Bd. of W. Bradford Twp.*, 952 A.2d 739, 745 (Pa. Commw. Ct. 2008); *Risker v. Smith Twp. Zoning Hearing Bd.*, 886 A.2d 727, 732 (Pa. Commw. Ct. 2005) (use was not subordinate or incidental where greater in size than the principal use); *Gabriel v. Rajeshjumar*, No. 19 MISC 000007, 2022 WL 2238816, at *1, *10, *15 (Mass. Land Ct. June 22, 2022) (affirming the board's finding that the plaintiff's garage use was not customary and incidental to the primary residence due to the disproportionate physical scale of the garage structure.)  As noted, *see supra* n.9, the Planning Board's size finding was clearly erroneous.  Further, the answer to this question—whether a non-accessory structure can be transformed into an accessory structure by precluding in the non-accessory structure one ordinary component of the use to which the principal structure is devoted—is not dependent on any specific factual predicate.  Additionally, the Planning Board's approval must be vacated because its legal reasoning was incorrect.  The Planning Board reasoned that the new structure was accessory because a "residential dwelling unit" is defined in the SZO as containing "cooking, sleeping, and toilet facilities."  *Supra* n.2.  Whether a structure meets the definition of a "residential dwelling unit" in the absence of cooking appliances is a question on which we need not and do not opine.  *Cf.* 1 M.R.S. § 71(2) (2024) ("The words 'and' and 'or' are convertible as the sense of a statute may require.")  That the Joneses' lot may not have two residential dwelling units on it is not the issue before us.  Rather, for the new structure to be allowed under the SZO, the new structure must be accessory, i.e., incidental and subordinate, to the pre-existing principal structure, whether or not the new structure is a residential dwelling unit.

accessory. Rather, to be accessory, the activity carried out in the second structure must complement, not duplicate, the use of the principal structure. *See Forster v. Town of Henniker*, 118 A.3d 1016, 1026 (N.H. 2015) ("An accessory use is not the principal use of the property, but rather a use occasioned by the principal use and subordinate to it." (quotation marks omitted)). As the New Hampshire Supreme Court has explained, "[t]he rule of accessory use is a response to the impossibility of providing expressly by zoning ordinance for every possible lawful use"; it is a use that is not expressly permitted but is incidental and subordinate to the principal use. *Fox v. Town of Greenland*, 864 A.2d 351, 357 (N.H. 2004) (quotation marks omitted); *see also Hannigan v. City of Concord*, 738 A.2d 1262, 1266 (N.H. 1999); Arden H. Rathkopf et al., 2 Rathkopf's The Law of Zoning and Planning § 33.4 (4th ed. 2024) ("[A] true accessory use . . . is distinguishable from and of a different nature than the principal use.").

[¶21] Second, as noted, *see supra* ¶ 6, the Joneses were candid about their objective in building the new structure: to build an addition to their pre-existing structure. An addition to a principal structure is not an accessory structure. *See* Patricia E. Salkin, 1 American Law of Zoning § 9:28 (5th ed. 2024)

12

("An addition to a main building or structure on a lot is not an accessory building or structure.").

[¶22]  This conclusion is reinforced by the last sentence of the SZO's definition of "[a]ccessory structure or use," providing that a deck or "similar extension of the principal structure or a garage attached to the principal structure by a roof or a common wall is considered part of the principal structure."  Belgrade, Me., Shoreland Zoning Ordinance § 17.  To allow the Joneses to extend the pre-existing house by chopping the structures in two or not covering the walkway between them would defeat the language and purpose of the restriction.

[¶23]  Third, relatedly and more broadly, there is a reason why the SZO precludes expansions near waterbodies—to protect the watershed.  *See id.* § 1 (listing the purposes of the Ordinance).  Conformity with a protective condition must be promoted, not disregarded.  *See id.* § 12(B)(2) (permitting "normal upkeep" of non-conforming uses and structures, including repairs or renovations "that do not involve expansion of the non-conforming use or structure").  Chopping a structure into two or avoiding total duplication in the structures by precluding a single activity within one of them is inconsistent with these shoreland zoning goals.  We should read all the provisions in an ordinance

in harmony and, if possible, consistent with their purposes, and not read some provisions in a way that would subvert other provisions in the same ordinance. *See Davis v. SBA Towers II, LLC*, 2009 ME 82, ¶ 22, 979 A.2d 86.

[¶24]  Fourth, we do not construe ordinance provisions in a manner that invites subterfuge and circumvention.  *Cf. Christy's Realty Ltd. P'ship v. Town of Kittery*, 663 A.2d 59, 62 (Me. 1995) (providing that a competing walk-in convenience store showed a particularized injury for standing purposes because while the new drive-thru convenience store would "ostensibly prohibit walk-in or walk-up business, there is a potential that this requirement would not be rigorously enforced," and its customers would use the walk-in store's parking spaces).

[¶25]  An Oregon decision is instructive.  In *Yunker v. Means*, 530 P.2d 846, 847 (Or. 1975), property owners built a second-story deck attached to their house.  *Id.*  Neighbors complained, noting that the expansion violated setback requirements.  *Id.*  The owners then removed timbers attaching the deck to the back side of the house and asserted that the deck was thereby transformed into an allowed "accessory building," defined in the ordinance as "a subordinate building, the use of which is clearly incidental to that of the main building on the same lot."  *Id.* (alterations and quotation marks omitted).  The

Oregon Supreme Court disagreed: "It is our opinion that the deck is not a detached accessory structure as contemplated by the ordinances. The apparent detaching of the deck was merely a subterfuge and did not comply with the spirit of the ordinances." *Id.*

[¶26]  Similarly, in *Kamp v. Stebens*, 517 N.W.2d 227, 228 (Iowa Ct. App. 1994), a property owner attempted to avoid a restriction on accessory buildings by attaching the second to the first with a breezeway.  The appellate court affirmed the rejection of this attempt, remarking that "[i]n referring to the use of the 'breezeway' process of converting the new garage to part of the existing house, the trial court used terms such as 'circumvent,' 'ploy to frustrate,' and we might add 'subterfuge' as a descriptive term of such process." *Id.* at 229.

[¶27]  The invitation for widespread evasion of the SZO flowing from an interpretation that would deem a structure accessory if one component of the principal structure's use were ostensibly prohibited is further supported in this record.  Compliance with the condition imposed by the Planning Board is not readily determined and is difficult to enforce, especially given the absence of any provision for the Town or the Stiffs to monitor compliance.  The CEO apparently will not deem a standard major appliance to be a "kitchen"

appliance if it is located in the "garage." The Joneses can still install appliances, cooking or not, outside, near the "playroom" with the sink. It is unclear whether washing dishes in that sink (and perhaps in an installed dishwasher) would violate the condition.

[¶28]  Fifth, and relatedly, an interpretation that allows transformation from an accessory structure into a non-accessory structure by an ambiguous and difficult-to-enforce activity limitation is so amorphous as to invite arbitrary approval and enforcement and thus run afoul of the restrictions on excessive delegation contained in our Constitution. *See Doane v. Dep't of Health & Hum. Servs.*, 2021 ME 28, ¶ 17, 250 A.3d 1101 (a purpose of Me. Const. art. III, § 2 is to avoid arbitrary decision making); *Stewart v. Town of Durham*, 451 A.2d 308, 311 (Me. 1982) (construing an ordinance to "avoid a danger of unconstitutionality" (quotation marks omitted)).

[¶29]  Whether, as a matter of fact, any bad faith can be ascribed to any actor in the regulatory process that occurred in this instance—something upon which we do not opine—as a matter of ordinance construction, to interpret the SZO language as being so malleable would be inconsistent with both its letter and spirit.

### III. CONCLUSION

[¶30]  In summary, the Joneses' new structure as built does not meet the SZO's definition of an accessory structure, and the condition imposed by the Planning Board did not transform that structure into one meeting the definition of an accessory structure contained in the SZO.

The entry is:

> Judgment vacated.  Remanded to the Superior Court with instructions to remand the matter to the Board of Appeals with instructions to remand to the Planning Board for further proceedings consistent with this opinion.

---

Chris Neagle, Esq. (orally), Neagle Law LLC, Cumberland, for appellants Geoffrey S. Stiff and Carolyn B. Stiff

Philip R. Saucier, Esq., and Zachary B. Brandwein, Esq. (orally), Bernstein Shur, Portland, for appellee Town of Belgrade

John A. Cunningham, Esq. (orally), Eaton Peabody, Portland, and Judy A.S. Metcalf, Esq., Judy Metcalf Law, Brunswick, for appellees Jody C. Jones and Stephen C. Jones