MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2025 ME 45
Docket:        BCD-24-384
Argued:        April 8, 2025
Decided:       June 3, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, DOUGLAS, and LIPEZ, JJ.

NEWFIELD SAND

v.

TOWN OF NEWFIELD

HORTON, J.

[¶1] Newfield Sand appeals from a judgment entered in the Business and Consumer Docket (*McKeon, J.*) affirming the Town of Newfield Planning Board's issuance of a conditional use permit for Newfield Sand's mineral-extraction operations. Newfield Sand challenges provisions in the permit providing that "[t]he Board reserves the right to re[e]valuate" the permit conditions governing the hours of operation and the maximum number of truck trips per day and per hour. We agree with Newfield Sand that the applicable ordinance did not authorize the Planning Board to retain jurisdiction after approving a conditional use permit and therefore vacate the judgment with an instruction for the court to remand the matter to the Planning Board for further consideration.

## I. BACKGROUND

[¶2]  The relevant facts are drawn from the Planning Board's findings, which are supported by the administrative record.  *See Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 17, 868 A.2d 161.

[¶3] Newfield Sand is a Maine corporation engaged in mineral extraction. Newfield Sand owns a nearly three-hundred-acre parcel in the Town of Newfield.  In 1994, the Planning Board granted a permit to Douglas Woodward, who owned the property at the time, to operate a five-acre gravel-extraction operation on the property.  The permit included two conditions of approval that are relevant here: (1) operations could occur only Monday through Friday, excluding holidays, from 6:30 a.m. to 5:30 p.m.; and (2) truck trips were limited to seventy per day, with the Board reserving "the right to revise if [a] hazardous situation occurs."  In 1997, Woodward sold the property to R. Pepin and Sons, Inc.  Newfield Sand acquired the property from R. Pepin & Sons in May 1998.

[¶4]  In 2015, Newfield Sand sought an after-the-fact variance approval from the Department of Environmental Protection to operate a working pit larger than ten acres.  When the Department granted the variance, the existing open area of the pit was about twenty-five acres, though the intention was to

keep an open pit area of only nineteen acres—the area currently open on the property.

[¶5]   In May 2022, Newfield Sand submitted an application for the Planning Board to issue a conditional use permit.  As required by the ordinance, Newfield Sand attached exhibits detailing its plans to expand its mineral-extraction operations to operate on thirty acres of open pit at a time and to extract minerals from a total of about eighty-five acres.  *See* Newfield, Me., Land Use and Zoning Ordinance art. VIII, §§ 1-2 (June 14, 2022).  Newfield Sand proposed that the permit retain the limit of seventy truck trips daily.

[¶6]   The Planning Board considered the application at multiple meetings, beginning in August 2022, and viewed the property in November 2022.  It held a public hearing on the application on December 7, 2022.  *See id.* art. VIII, § 2(B).

[¶7]   On November 29, 2023, the Planning Board approved the application subject to multiple conditions.  *See id.* art. VIII, § 5.  Among those conditions were the following, with the contested provisions italicized:

> 2.     The Applicant's hours of operation shall be limited to 6:30 am-5:30 pm, Monday-Saturday, excluding Holidays. The Applicant shall only be allowed to operate one machine on the Property on Saturdays.  *The Board reserves the right to re[e]valuate the Applicant's hours of operation in the event that the CEO presents evidence, at a duly noticed public*

*hearing in which the Applicant is permitted to present evidence and object to any evidence presented by the CEO, to the Board that the Applicant's operations have resulted in a significant adverse impact upon the value or quiet possession of surrounding properties greater than would normally occur from such a use in the zoning district in which the Property is located.*

3. The daily truck trips from the Property shall be limited to seventy (70) trips per pay, and no more than seven (7) truck trips may occur in any one hour. *The Board reserves the right to re[e]valuate this truck trip limitation in the event that the CEO presents evidence, at a duly noticed public hearing in which the Applicant is permitted to present evidence and object to any evidence presented by the CEO, to the Board that truck traffic travelling to and from the Property has resulted in a significant adverse impact upon the value or quiet possession of surrounding properties greater than would normally occur from such a use in the zoning district in which the Property is located.*

(Emphasis added.) The Planning Board imposed these conditions despite Newfield Sand's opposition to any condition that would allow the Board to modify the permit after issuing it.

[¶8] Newfield Sand timely filed its complaint for review of governmental action in the Superior Court on December 18, 2023. *See id.* art. XI, § 6; M.R. Civ. P. 80B(b). The case was accepted for transfer to the Business and

Consumer Docket. The court affirmed the Planning Board's decision. Newfield Sand timely appealed. M.R. App. P. 2B(c)(1).[1]

## II. DISCUSSION

[¶9] Newfield Sand argues that although the Planning Board may issue a permit with conditions, it may not thereafter change those conditions or revoke the permit. It contends that nothing in the ordinance authorizes the Planning Board to monitor the activity of a conditional-use-permit holder or modify the permit after it has been issued, and that because the ordinance does not supply a standard for modifying a permit upon a showing of a "significant adverse impact," the Board is improperly legislating by adopting a standard and process not contained in the ordinance.

---

[1] Although the Town argues that Newfield Sand's challenge to the provision allowing reevaluation of the daily truck trip limit cannot be raised in the current appeal because there was no appeal from the reservation of the right to revise in the 1994 permit, Newfield Sand is not contesting the 1994 permit's condition reserving the right to revise "if [a] hazardous situation occurs." *Cf. Town of Boothbay v. Jenness*, 2003 ME 50, ¶ 21, 822 A.2d 1169 ("If a party does not challenge an administrative order through an available appeal that contains the essential elements of adjudication, the failure to do so may have preclusive effect upon any subsequent litigation on *identical issues and claims* dealt with in the administrative order." (emphasis added and quotation marks omitted)). Newfield Sand is instead contesting a condition in a new conditional use permit that retains jurisdiction in the Planning Board to adjust the limit on daily truck trips upon a showing by the code enforcement officer of a specified significant adverse impact. This condition could not have been challenged in 1994 because it is contained in a new permit and differs from the reservation of right in the 1994 permit. Moreover, the applications yielding the permits were themselves different, with the most recent application seeking approval for more extensive use. *See Town of Ogunquit v. Cliff House & Motels, Inc.*, 2000 ME 169, ¶ 13, 759 A.2d 731.

6

[¶10] The Town argues that although there is no explicit authorization of a post-approval modification of conditions, the ordinance does not have to explicitly grant that authority; instead, the authority derives from a necessary inference that the Planning Board may impose such conditions to exercise its full powers. The Town also notes that we previously affirmed the revocation of an issued permit for failure to satisfy conditions in *Bushey v. Town of China*, 645 A.2d 615, 617 (Me. 1994).

[¶11] Our review of Newfield Sand's challenge to the scope of the Planning Board's authority requires the interpretation of the Town's ordinance. "The interpretation of an ordinance is a question of law that we review de novo, with no deference to the local board's interpretation." *Stiff v. Town of Belgrade*, 2024 ME 68, ¶ 12, 322 A.3d 1167.

[¶12] The ordinance at issue here gives the Planning Board the authority to decide whether to issue a conditional use permit: "A building, structure or parcel of land may be employed for a conditional use if the use is specifically listed in the regulations governing the zoning district in which the use is proposed, and if a conditional use permit is approved by the Planning Board." Newfield, Me., Land Use and Zoning Ordinance art. VIII, § 1. "A conditional use may be granted by the Planning Board only in the event that the applicant has

established to the satisfaction of the Planning Board that," among other things, "[n]either the proposed use nor the proposed site upon which the use will be located is of such a character that the use will have significant adverse impact upon the value or quiet possession of surrounding properties greater than would normally occur from such a use in the zoning district." *Id.* art. VIII, § 3(A).

> The Planning Board may attach conditions to its approval of a conditional use permit. These conditions may include, but not limited to, such requirements as[:]
>
> **A.** Street improvements;
> **B.** Access restrictions;
> **C.** Hours of use;
> **D.** Buffering and screening;
> **E.** Utility improvements;
> **F.** Performance guaranties for required off-site improvements.

*Id.* art. VIII, § 5. "Provided all conditions and standards of approval are met, a conditional use permit shall expire if there has been inactivity for two years unless activity can be shown by tax returns, licenses, permits, etc." *Id.* art. VIII, § 7.

[¶13] Although the Planning Board does have a role in the process for amending the zoning ordinance, its role in that process is to hold a public hearing and submit the matter to the legislative authority.[2] *See id.* art. XI, § 4

---

[2]  Neither party has provided a town charter or any other legal authorities governing the organization of the Town.  Newfield Sand indicates in its brief that the legislative authority of the Town is exercised by the residents at town meetings.

("No land use regulation or amendment thereof or change in the Official Land Use Map shall be adopted until after the Planning Board has held a public hearing thereon at least ten days before it is submitted to the legislative body for consideration.").

[¶14]  The parties agree that the ordinance does not explicitly provide a procedure for the Planning Board to modify an issued permit.  The Town argues that the ordinance does, by necessary inference, confer authority on the Planning Board to establish such a procedural mechanism, citing authority that draws necessary inferences from statutes—not ordinances—that create public bodies.  *See Hallissey v. Sch. Admin. Dist. No. 77*, 2000 ME 143, ¶ 11, 755 A.2d 1068 ("[P]ublic bodies . . . may exercise only that power which is conferred upon them by law.  The source of that authority must be found in the enabling statute either expressly or by necessary inference as an incidence essential to the full exercise of powers specifically granted." (quotation marks omitted)).  We apply the same principles in construing the ordinance because the Town exercised its legislative power to adopt the ordinance, as it is authorized by statute to do, and its placement of authority in a Planning Board mirrors the Legislature's placement of authority in a public body through a statute.  *See* 30-A M.R.S. § 3001 (2025) ("Any municipality, by the adoption, amendment

or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter."); *see also* 30-A M.R.S. §§ 4351 to 4364-C (2025) (governing municipal land use regulation);[3] Me. Const. art. VIII, pt. 2 (governing municipal home rule authority).

[¶15]  In determining whether to issue a permit, the Planning Board is required to consider, among other things, whether a proposed use would "have significant adverse impact upon the value or quiet possession of surrounding properties greater than would normally occur from such a use in the zoning district."  Newfield, Me., Land Use and Zoning Ordinance art. VIII, § 3(A). Conditions may be imposed to prevent such adverse impacts.  *See id.* art. VIII, § 5.

[¶16]  The ordinance does not, however, explicitly or by necessary implication, authorize the Planning Board to reevaluate or modify a condition after it issues a permit, nor does it provide for continuing Planning Board

---

[3] Although some amendments to these statutes took effect after the Planning Board's decision, *see, e.g.*, P.L. 2023, ch. 536, § 1 (effective Aug. 9, 2024) (codified at 30-A M.R.S. § 4364-C(3) (2025)), the amendments are not material to our discussion, and we cite the statutes currently in effect.

jurisdiction over the permit. It also does not authorize what would essentially be a delayed reopening of the evidentiary record on a permit application.

[¶17] Our caselaw suggests that any conditions imposed must be authorized by the enabling ordinance and defined clearly when a permit is granted so that the permittee understands what is required. *See Cobbossee Dev. Grp. v. Town of Winthrop*, 585 A.2d 190, 193-94 (Me. 1991); *Total Quality, Inc. v. Town of Scarborough*, 588 A.2d 283, 285 (Me. 1991). Permits and ordinances lacking those attributes may be vulnerable to challenge for vagueness or excessive delegation of the municipality's legislative authority. *Cf. Doane v. Dep't of Health & Hum. Servs.*, 2021 ME 28, ¶ 17, 250 A.3d 1101.

[¶18] The decisions cited by the Town do not support its argument that the Planning Board has actual or implied authority to include conditions allowing it to reevaluate and potentially rewrite permit requirements and limitations. In *Bushey*, for example, we affirmed the revocation of a permit when the municipal board of appeals concluded, on appeal by a neighbor, that permit conditions for a kennel had not been satisfied within the prescribed time. *Bushey*, 645 A.2d at 617-19. Those conditions were specific and established in the permit: "the off-site disposal of solid waste, the installation of a buffer for noise control, and the installation of a mechanical dog silencer

device." *Id.* at 617. Here, the challenged portions of the permit render Newfield Sand's obligations uncertain because the permit limits are subject to change at any time if the code enforcement officer initiates a proceeding for the Planning Board to revisit the permit.

[¶19] The Town also cites *S.D. Warren Co. v. Bd. of Env't Prot.*, 2005 ME 27, ¶ 23, 868 A.2d 210, for the proposition that the Planning Board was entitled to include conditions allowing the reopening of the record for a reevaluation of the permit standards for operating hours and truck trips. In *S.D. Warren*, we said, "The [Board of Environmental Protection (BEP)] included conditions in its certification that permit the certification to be reopened and the conditions amended following notice and hearing. The inclusion of these 'reopeners' is permissible under both state and federal law." *Id.* We reasoned that, because the Board of Environmental Protection had express state statutory authority both to issue certain federal environmental certifications and to enforce Maine water quality standards, the use of "reopeners" was essential to the Board's full exercise of the powers granted to it. *Id.* ¶ 28. "This authority is essential because if the conditions are not as effective as planned, the water quality standards will not be met and the BEP's goal to restore and maintain the chemical, physical and biological integrity of the State's waters . . . will not be

achieved" during the license's forty-year term. *Id.* (quotation marks omitted). The conditions imposed here are different because (1) the Planning Board lacks the authority to enforce permits or performance standards, (2) a forty-year discharge license is not the equivalent of a conditional use permit with no definite limit on duration once the use is commenced, and (3) the Planning Board's reopeners are not tied to readily measurable criteria akin to water quality standards.

[¶20]  This case also differs from the situation presented in *Fitanides v. City of Saco*, 2015 ME 32, ¶ 14, 113 A.3d 1088, in which the applicable ordinance allowed the planning board to attach such conditions as it found "necessary to further the purposes of th[e] Ordinance." (Quotation marks omitted.)  The planning board issued a permit with a condition delegating authority to the City Planner to consider minor deviations from the approved plans to ensure that those changes would be subject to municipal review for compliance with zoning and building laws. *Id.*  We held that the condition was authorized and noted that the condition imposed was "consistent with other provisions of the Ordinance that delegate[d] similar tasks to that official." *Id.* ¶ 15.  Here, in contrast, the Planning Board conferred continuing jurisdiction on itself to modify major conditions limiting the hours of operation and the number of

daily truck trips—conditions that are fundamental to the proposed use and do not represent minor deviations from the permit. *Cf. id.* ¶ 14.

[¶21] Although we have acknowledged the authority of boards to reconsider permitting decisions, *see Cardinali v. Town of Berwick*, 550 A.2d 921, 921 (Me. 1988) ("Planning boards and other agencies have the inherent power to reconsider actions previously taken."), we have generally held that procedures for such reconsideration must be officially adopted, *see id.* at 923-24 (holding that in the absence of an adopted rehearing process, a decision of a municipal planning board was final and appealable when it was made, not after further proceedings flowing from an informal request for rehearing). We have upheld a planning board's authority to reconsider a decision in the absence of an adopted process when the board initially *denied* the permit, then reconsidered and approved a modified proposal. *See Jackson v. Town of Kennebunk*, 530 A.2d 717, 717-18 (Me. 1987). Nothing in our opinion endorses an open-ended, post-approval reconsideration period—not provided for by ordinance—as contemplated by the conditions imposed here.

[¶22] In a pair of cases from other states addressing issues similar to those presented here, each court rejected conditions that provided for continuing administrative jurisdiction over matters when the authorizing

legislation did not provide for the retention of jurisdiction. *See Appeal of N.H. Div. of State Police*, 286 A.3d 170, 178 (N.H. 2022); *In re Treetop Dev. Co. Act 250 Dev.*, 143 A.3d 1086, 1091 (Vt. 2016). The New Hampshire Supreme Court considered a challenge to a state agency's imposition of a condition allowing it to modify a decision for good cause. *Appeal of N.H. Div. of State Police*, 286 A.3d at 172-73, 178. The court held that the agency had "exceeded its statutory authority by attempting to retain continuing jurisdiction over th[e] matter" when "[n]othing in the statutory or regulatory scheme provide[d it] with the authority to exercise ongoing jurisdiction over its decisions." *Id.* at 178.

[¶23] The Vermont Supreme Court reviewed a condition that reserved continuing jurisdiction over a stormwater system by providing "a mechanism to continuously amend the permit as necessary to redress future . . . violations or failures under the terms of the approved project by adding additional conditions." *In re Treetop Dev. Co. Act 250 Dev.*, 143 A.3d at 1091. The court held, "Not only does this exceed the Commission's authority, which is limited to considering permit applications in the context of the . . . statutory criteria and either approving or denying the application, and amending permits under the procedure outlined in *In re Stowe Club Highlands,* 166 Vt. 33, 37, 687 A.2d 102,

105 (1996), but it prevents finality, an integral part of the land use permitting process." *In re Treetop Dev. Co. Act 250 Dev.*, 143 A.3d at 1091.

[¶24]  We conclude that the conditions here are outside the Planning Board's authority because the ordinance does not—explicitly or by necessary implication—authorize the Planning Board to modify or revoke a permit, retain jurisdiction over the permit, or reopen the evidentiary record on the permit after it is issued.  Moreover, the conditions do not clearly define what is required for Newfield Sand to comply with the limits on truck trips and hours of operation without triggering a reevaluation of those limits, *see Cobbossee Dev. Grp.*, 585 A.2d at 193-94; *Total Quality, Inc.*, 588 A.2d at 285; *Bushey*, 645 A.2d at 617-19, and unlike the water quality monitoring at issue in *S.D. Warren Co.*, 2005 ME 27, 868 A.2d 210, there are no quantifiable or concrete triggers for reevaluation.[4]

[¶25]  Having concluded that the challenged provisions cannot stand, we now consider whether we should order those provisions stricken and affirm the issuance of the permit as modified or require remand to the Planning Board for further consideration.  Although the Planning Board found that the proposed use would not have "a significant adverse impact upon the value or

---

[4] We need not, and do not, reach the other issues raised by Newfield Sand regarding the vagueness of the reevaluation provisions and the effect of the provisions on Newfield Sand's vested rights.

quiet possession of surrounding properties greater than would normally occur from such use in the zoning district," it also stated that "[i]n order to make this finding, the Board ha[d] imposed several conditions of approval." Because we cannot assume in this instance that the Planning Board would have approved the permit without the provisions that we now hold were not within the Planning Board's power to impose, we vacate the court's judgment and order the court to remand the matter to the Planning Board for further consideration of Newfield Sand's application for a conditional use permit. *See Houlton Water Co. v. Pub. Utils. Comm'n*, 2014 ME 38, ¶¶ 37-38, 87 A.3d 749 (remanding to the Public Utilities Commission for further consideration, including consideration of imposed conditions, when we vacated its decision based on our statutory interpretation).

The entry is:

> Judgment vacated. Remanded to the court with
> instructions to remand to the Planning Board for
> further consideration.

Kristin M. Collins, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Augusta, for appellant Newfield Sand

Benjamin J. Plante, Esq. (orally), and Leah B. Rachin, Esq., Drummond Woodsum, Portland, for appellee Town of Newfield